Daniel W. BRADLEY, Plaintiff–
Appellant,

v.

CHIRON CORPORATION, William J. Rutter, Edward E. Penhoet, Michael Houghton, Qui Lim Choo, George Kuo and Ortho Diagnostic Systems, Inc., Defendants–Appellees.

No. 96–1536.

United States Court of Appeals,
Federal Circuit.

Feb. 20, 1998.

Brent L. English, Cleveland, OH, argued for plaintiff-appellant. Of counsel on the brief was Kenneth K. Sharples, Fairfax, CA.

Gerald Sobel, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, argued for defendants-appellees. With him on

the brief were Thomas A. Smart, Gregory E. Bylinsky, and Efrem Schwalb. Of counsel on the brief were Robert P. Blackburn and Nancy J. Koch, Chiron Corporation, Emeryville, CA; and Eric I. Harris, Johnson & Johnson, New Brunswick, NJ. Also of counsel was Frederick H. Paulmann, IV, of Kaye, Scholer, Fierman, Hays & Handler, LLP.

Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Daniel W. Bradley, a research scientist employed until 1994 at the Centers for Disease Control and Prevention (CDC) in Georgia, brought suit in the United States District Court for the Northern District of California, seeking to rescind a settlement agreement he had entered into with Chiron Corporation. He also requested declaration of his inventorship of certain patents, damages, and other monetary relief. The defendants (collectively "Chiron") moved to dismiss the original complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted.[1] Dr. Bradley amended his original complaint as of right, and the defendants moved to dismiss the amended complaint pursuant to Rule 12(b)(6). The district court held that Dr. Bradley had not pled facts sufficient to state a claim upon which relief could be granted. However, the court granted leave to amend the first amended complaint to state additional facts in support of the asserted ground of unilateral mistake. *Bradley v. Chiron Corp.*, No. C 94–04342 CW (N.D.Cal. Nov. 15, 1995) (order). Dr. Bradley then filed a second amended complaint. In this complaint he made several factual allegations that differed from the allegations in the first amended complaint. The district court struck the changed allegations as false and sham, and then dismissed the complaint. *Bradley v. Chiron Corp.*, No. C 94–04342, 1996 WL 441022 (N.D.Cal. Jul. 15, 1996) (order). Dr. Bradley challenges the dismissal, asserting that his pleadings contained facts sufficient to support rescis-

sion of the settlement agreement, and that the changed allegations did not warrant being struck.

Federal Circuit jurisdiction of this appeal derives from the counts for declaration of inventorship and unenforceability under the patent laws. *See* 28 U.S.C. §§ 1331, 1338(a), 1295(a)(1). For the reasons we shall discuss, the decision of the district court is affirmed.

## BACKGROUND

The following facts are taken primarily from the first amended complaint:

In 1977 Dr. Bradley began the research that led, after many years of effort, to his successful isolation of a concentrated and purified form of the hepatitis C virus (HCV), including characterization of various properties of the virus. This work was of scientific interest and importance. In 1982 Chiron Corporation entered into a collaboration with CDC and Dr. Bradley whereby Chiron would attempt, using recombinant procedures, to clone the virus from the samples provided by Dr. Bradley. All involved knew that a successful cloning could be of commercial value.

While this work was in progress the parties discussed the rights to any inventions that might result from the collaboration, but did not arrive at a resolution. In 1987 Chiron succeeded in cloning a portion of the virus. Dr. Bradley states that he contributed to this effort. Using this material, Chiron developed a diagnostic assay for detecting the presence of HCV, vaccines, and related technology. Chiron filed patent applications on these developments, naming its scientists as the inventors. Thereafter the collaborative relationship deteriorated. Dr. Bradley consulted with CDC's lawyers about the possibility of challenging Chiron's patents, and was directed to an attorney at the patent branch of the National Institutes of Health, Ms. Glenna Hendricks. Ms. Hendricks advised Dr. Bradley on various issues of patent law, and in September 1989 filed a patent application in which Dr. Bradley was named as an inventor along with three Chiron scien-

---

**1. Rule 12(b)** ... the following defenses may at the option of the pleader be made by motion: ... **(6)** failure to state a claim upon which relief can be granted, ... A motion making any of these defenses shall be made before pleading. ...

tists. This application was filed in order to provoke an interference proceeding with the Chiron application in the Patent and Trademark Office (PTO), for the purpose of resolving issues of inventorship and ownership of these inventions.

In October 1989 Chiron wrote to CDC proposing to establish "an overall mechanism that would compensate Dr. Bradley's contribution regardless of his status as an inventor, resolve any inventorship dispute and protect Chiron's commercial interests." The proposed Settlement Agreement was negotiated for CDC by Mr. Gene Matthews, a CDC lawyer. On March 12, 1990 a copy of the proposed agreement was signed by Mr. Matthews for CDC and by Dr. Bradley, and forwarded to Chiron. Chiron added some provisions to the agreement and signed it, about a month later. The additions were accepted and initialed by CDC and Dr. Bradley.

The Settlement Agreement contained the following provisions concerning patent ownership and inventorship:

§ 2.1 CDC ... the United States ... and Dr. Bradley hereby forever release, discharge and assign to Chiron their entire right, title and interest in and to, any and all claims, actions and the like based in law or equity known or unknown, now existing or which might arise hereafter, (a) against Chiron or Chiron's employees (past or present), Chiron's directors (past or present) or licensees arising from actions occurring prior to the date of this Agreement and related to any collaboration among Dr. Bradley, CDC and Chiron; or (b) regarding the inventorship, ownership or control of Chiron Patents or foreign counterparts thereof. CDC and Dr. Bradley hereby assign to Chiron any and all right title and interest in or to Chiron Patents and the inventions claimed therein.

§ 2.2 CDC and Dr. Bradley warrant that no patent application will be maintained naming Dr. Bradley as an inventor or co-inventor that now claims or is later amended to claim subject matter interfering with the subject matter claimed in Chiron Patents as filed and as set forth in confidential Exhibit 2.2.

§ 2.3 After the effective date of this Agreement, CDC and Dr. Bradley will make Dr. Bradley and any supporting documents promptly and reasonably available to Chiron for the sole purpose of evaluating his claim to inventorship. After concluding such evaluation, Chiron may, at its discretion, (i) add Dr. Bradley to one or more Chiron Patents as an inventor if in Chiron's opinion Dr. Bradley is an inventor or (ii) submit any material information regarding inventorship to the U.S. Patent and Trademark Office. If Dr. Bradley is added as an inventor to one or more Chiron Patents, whether by Chiron or by any tribunal of competent jurisdiction, CDC and Dr. Bradley will cooperate fully with and without charge to Chiron, and execute any and all necessary and proper documents related to Chiron Patents and the assignment contained in paragraph 2.1.

Chiron agreed to pay CDC $1,912,500 and to pay Dr. Bradley $337,500 over five years.

In December 1994 Dr. Bradley brought suit in the Northern District of California, seeking to rescind the settlement. He alleged mistake, fraud, and failure of consideration. Chiron moved to dismiss the complaint, stating that there was no basis for the allegations and that Dr. Bradley's requested relief was "barred by his prior release." It was not disputed that unless the settlement agreement was rescinded, Dr. Bradley's claims were barred by the release.

In keeping with the rules governing dismissal under Rule 12(b)(6) the factual statements in the complaint are accepted as true. The dismissal of a claim under Rule 12(b)(6) is proper only when, on the complainant's version of the facts, the premises of a cognizable claim have not been stated. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.,* 988 F.2d 1157, 1160, 26 USPQ2d 1038, 1041 (Fed.Cir. 1993); *Epstein v. Washington Energy Co.,* 83 F.3d 1136, 1139 (9th Cir.1996). The appellate court, like the district court, tests the sufficiency of the complaint as a matter of law, accepting as true all well-pleaded allegations of fact, construed in the light most

favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Advanced Cardiovascular,* 988 F.2d at 1160–61, 26 USPQ2d at 1041; *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim. *See Epstein,* 83 F.3d at 1140; *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 315–18 (1990).

■■■■ Under California law [2] settlement of disputes is a strongly favored public policy, for settlement reduces costs for all parties, conserves judicial and private resources, and promotes good will. *Neary v. Regents of the Univ. of California,* 3 Cal.4th 273, 10 Cal.Rptr.2d 859, 860–61, 834 P.2d 119, 121 (1992); *cf. Foster v. Hallco Mfg. Co.,* 947 F.2d 469, 477, 20 USPQ2d 1241, 1247 (Fed. Cir.1991) (there is a "strong public interest" in settlements). In *Neary* the court observed that "[t]he need for settlements is greater than ever before" and "[w]ithout them our system of civil adjudication would quickly break down." 10 Cal.Rptr.2d at 861, 834 P.2d at 121 (citations omitted). Although the courts well recognize the public as well as private interest in the finality of settlements, as for all contracts a settlement will not be enforced if it is tainted by fraud or another condition that warrants its rescission.

## UNILATERAL MISTAKE

■■■■ The policy favoring settlement is bolstered by the rule that "a party who signs a written agreement generally is bound by its terms, even though he neither reads it nor considers the legal consequences of signing it." *Operating Eng'rs Pension Trust v. Gilliam,* 737 F.2d 1501, 1504 (9th Cir.1984). Accordingly, rescission based on unilateral mistake, although available, *see* Cal. Civ.Code

§ 1689(b)(1) (West 1997), requires either a showing that the mistaken party did not neglect a legal duty, or a showing that the nonmistaken party knew of the mistake:

**§ 1577. MISTAKE OF FACT.** Mistake of fact is a mistake, *not caused by the neglect of a legal duty* on the part of the person making the mistake, and consisting in:

1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,

2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed.

**§ 1578. MISTAKE OF LAW.** Mistake of law constitutes a mistake, within the meaning of this Article, only when it arises from:

1. A misapprehension of the law by all parties . . . or,

2. A misapprehension of the law by one party, of *which the others are aware at the time of contracting,* but which they do not rectify.

Cal. Civ.Code §§ 1577–78 (West 1997) (emphases added).

The rules of pleading require that "the circumstances constituting fraud or mistake shall be stated with particularity," Fed. R.Civ.P. 9(b); *see In re GlenFed, Inc.,* 60 F.3d 591, 593 (9th Cir.1995), and Dr. Bradley filed a detailed complaint containing facts on which he based his assertions that he had made mistakes of both fact and law. Chiron argued that the complaint did not show either a mistake of fact or a mistake of law as those claims have been codified in §§ 1577 and 1578.

■■■■ In his first amended complaint Dr. Bradley alleged that he "entered into the

---

2. For substantive issues not exclusively assigned to the Federal Circuit, we apply the law and look to the precedent of the forum in which the case was tried. *Sun Studs, Inc. v. Applied Theory Assoc., Inc.,* 772 F.2d 1557, 1561, 227 USPQ 81, 83 (Fed.Cir.1985). The forum state's conflict of law rules apply. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). California applies the law of the state having the "most significant relationship" to the case.

*Grant v. McAuliffe,* 41 Cal.2d 859, 264 P.2d 944 (1953). The district court, without objection by either party, applied California contract law. Chiron now argues that "federal common law" applies to contracts to which the government is a party. Because Chiron did not object to the district court's choice of California law as governing the contract issues, we apply California contract law.

agreement on the mistaken belief that it contained an effective, meaningful, and legally enforceable mechanism to have his right to be an inventor ... determined in an objective, proper manner by the PTO," referring to the inclusion of § 2.3 in the agreement. He stated that he was in fact mistaken, because the only mechanism by which the PTO could evaluate his claim to inventorship was an interference proceeding, which according to § 2.2 of the agreement, was unavailable to him. He also stated that he believed that if he were declared a joint inventor by the procedures of § 2.3 he would have the right to practice the inventions, and that he was mistaken because Chiron interprets § 2.1 as meaning that he assigned to Chiron all rights he might have as an inventor.

The district court examined § 2.3 and determined that it was neither misleading nor ambiguous. The court placed weight on the provision of § 2.3 that Chiron "may, at its discretion" add Dr. Bradley as an inventor or submit information on inventorship to the PTO; and held that these were not words of obligation and could not reasonably be so understood. The court also examined § 2.2, which required Dr. Bradley not to maintain any interfering patent application, and pointed out its inconsistency with Dr. Bradley's allegation that he expected that § 2.3 would lead to determination of inventorship. The court also examined § 2.1, wherein Dr. Bradley assigned to Chiron "all rights" in the Chiron patents, and stated that it could not reasonably have been read as granting Dr. Bradley rights to practice the patented inventions.

 The district court concluded that the contract provisions were unambiguous, fully consistent as written, and not consistent as construed by Dr. Bradley. We agree with the district court's reading of the contract. It is "the general rule of law in California" that "when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provision is contrary to his intentions or understanding." *Dobler v. Story,* 268 F.2d 274, 277 (9th Cir. 1959). The district court concluded that if

Dr. Bradley were in fact mistaken it was due to his neglect of the legal duty imposed by Cal. Civ.Code § 1577.

 Dr. Bradley also asserted grounds of rescission based on mistake of law, Code § 1578, in that he "misapprehended the law related to how the PTO would evaluate any material information about inventorship and Chiron knew of this misapprehension...." However, he provided no support for the allegation that Chiron was aware of his misapprehension, for he stated that he was insulated from Chiron throughout the negotiation. To obtain rescission for mistake of law, Code § 1578, it was necessary that Chiron knew of Dr. Bradley's mistake.

The district court correctly relied on California precedent. Although Dr. Bradley criticizes the district court's reliance on cases variously involving misrepresentations of fact or mistake of law, these authorities support the district court's requirement that the allegations be sufficient to support the inferences and conclusions proposed by Dr. Bradley. *See generally* 1 B.E. Witkin, Summary of Cal. Law, Contracts § 370 at 337 (9th ed.1987). Although Dr. Bradley argues that Chiron should have known that he would misunderstand what was written, no support was presented for that theory. We agree with the district court that Chiron could not be charged with knowledge that Dr. Bradley would neglect his legal duty to understand what he was signing. As the Ninth Circuit has explained:

> [I]t is the duty of every contracting party to learn and know [the contract's] contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. He owes it to the public, which, as a matter of public policy, treats the written contract as a conclusive answer to the question, what was the agreement?

*Whitney Co. v. Johnson,* 14 F.2d 24, 25–26 (9th Cir.1926). *See also Taff v. Atlas Assurance Co.,* 58 Cal.App.2d 696, 137 P.2d 483, 487 (1943) (the "experience and intelligence of plaintiff [are] factors to prove his neglect" of a legal duty).

The district court did not err in requiring the pleading of facts sufficient to show that, in the absence of fraud and misrepresentation, Dr. Bradley had complied with the duty to obtain legal advice appropriate to the circumstances. The weight of public policies favoring settlement of disputes, the integrity of contracts, and the stability of agreements that had been fully performed by a party, require "reasonable inquiry to ascertain or effort to understand the meaning and content of the contract upon which one relies." *Wal–Noon Corp. v. Hill,* 45 Cal.App.3d 605, 119 Cal.Rptr. 646, 652 (1975).

The district court was required to draw all inferences of fact in Dr. Bradley's favor upon the pleadings. However, the district court was not required to accept representations that the court viewed, we think correctly, as "nonsensical." We agree that it would negate the entire purpose of the settlement, including the payments made, to interpret the contract to require Chiron to take steps that could place ownership in those persons in whom it might have resided if there had been no settlement.

The district court, analyzing the recitations in the complaint and the applicable law, concluded that Dr. Bradley had not alleged facts that could support rescission of the settlement agreement on the grounds of mistake. The court observed that Dr. Bradley did not plead misrepresentation by Chiron, voluntarily entered into the agreement, did not seek legal advice before signing the agreement, and proposed no plausible alternative meaning to support his asserted mistake. We agree that Dr. Bradley failed in the first amended complaint to allege facts sufficient to show that he did not neglect his legal duty in connection with the asserted mistake of fact, and that the premises of mistake of law are not present. The district court correctly held that the allegations of the first amended complaint were insufficient to support a claim based on mistake of either fact or law.

■ However, the district court granted Dr. Bradley leave to amend the complaint in order to allege facts to show that he had not neglected his legal duty to use reasonable care to understand the agreement before signing it. The court stressed the need to show "a plausible meaning or effect he mistakenly understood," to support the position that he acted reasonably. *See Roller v. California Pacific Title Ins. Co.,* 92 Cal.App.2d 149, 206 P.2d 694, 697 (1949) (a person alleging a mistake with respect to a writing must have exercised "at least the degree of diligence 'which may be fairly expected from a reasonable person'" (quoting *Grymes v. Sanders,* 93 U.S. (3 Otto) 55, 61, 23 L.Ed. 798 (1876))).

Dr. Bradley then filed a second amended complaint, in which he recited facts concerning his legal relationships, the date of certain events, his contact with lawyers before he signed the agreement, and the advice he received. New facts were recited that called into question the recitations in the first amended complaint.

The district court pointed out the discrepancies between the second and the first amended complaints, and struck the new facts as "false and sham." *See Ellingson v. Burlington Northern, Inc.,* 653 F.2d 1327, 1329–30 (9th Cir.1981) (a trial judge has the authority to strike pleadings that are "false and sham"); *see generally* 2 James Wm. Moore, Moore's Federal Practice § 11.24[2] at 11–55 (Rel. Mar. 1997). The district court described Dr. Bradley's changed recitations as a transparent attempt to conform the facts to the requirements of the cause of action. The court drew analogy to *Schwartz v. Esmark, Inc.,* No. 78–C–1909 (N.D.Ill. Mar. 31, 1990) wherein a plaintiff, in order to avoid dismissal of his case due to the lapsing of the statute of limitations, amended his complaint and changed his account of when certain events occurred. The court in *Schwartz* remarked that the "plaintiff could not, in good faith, have so diametrically reversed his recollection and position between the time of the filing of his original complaint and that of his second amended pleading." No. 78–C–1909 (N.D.Ill. Mar. 31, 1990); *see* 1996 WL 441022 at *4 (quoting *Schwartz* ). Similarly, the district court in the case at bar pointed out that Dr. Bradley's original and first amended complaints were written a year earlier and thus represented a fresher recollection, remarking that "the original complaint was 104 pages in length (excluding glossary, exhibit

list and exhibits), and clearly constituted a comprehensive statement of Plaintiff's allegations and claims." 1996 WL 441022 at *5. The court remarked on the consistency between the original and first amended complaints, and suggested that Dr. Bradley's position on the facts was then "fixed and clear." *Id.* Although Dr. Bradley in his brief explains the changed facts as an "eventual recollection," the district court did not abuse its discretion in rejecting the changes as sham.

To illustrate the discrepancies: In the first amended complaint Dr. Bradley stated that he was first presented with the proposed settlement agreement on March 10, 1990 by Mr. Matthews, the CDC lawyer. He stated that neither Matthews nor any other lawyer explained the agreement to him, although Matthews gave him a copy of the agreement. He stated that he did not discuss the agreement with any patent attorney before he signed it on March 12, or before he initialed Chiron's changes a month later. The first amended complaint stated:

> Neither Matthews nor Lanman nor any other lawyer associated with the CDC or NIH explained any of the language to Dr. Bradley. The document was simply presented as a fait accompli.

In the second amended complaint Dr. Bradley presented facts of discussions with Matthews and NIH patent attorney Hendricks. He now stated that Matthews showed him the proposed agreement on March 11, one day before he signed it, and not March 10 as he previously stated. He stated that Matthews confirmed his reading of § 2.3, and that he relied on Matthews' legal advice. He stated that he was not given a copy of the proposed agreement, contradicting the prior statement that Matthews gave him a copy. He now stated that he telephoned Ms. Hendricks, the patent attorney at NIH, to discuss the agreement, that she told him that she could not advise him because she had not seen the agreement, and that he could not send her a copy because Matthews had not given him a copy. In the second amended complaint the portion quoted *supra* was replaced with:

> Matthews told Dr. Bradley that the agreement would provide Dr. Bradley with money and an opportunity to be named as an inventor.... Matthews told Dr. Bradley that section 2.3 of the agreement would give him an opportunity to have his inventorship claim dealt with fairly and objectively.... Bradley had confirmed with Matthews that [section 2.3] would give [Dr. Bradley] a means to have his inventorship claims determined by independent means.... Matthews confirmed that the mechanism in section 2.3 of the agreement was viable and appropriate and was a major benefit to Bradley.

Although Dr. Bradley in his brief describes these differences as "hardly material," we must agree with the district court that the new pleadings exceeded permissible adjustment of factual allegations. *See Reddy v. Litton Industries, Inc.,* 912 F.2d 291, 296 (9th Cir.1990) (grant of leave to amend is grounded on expectation of facts reasonably consistent with those already pled). The allegations were changed in material ways that were not adequately explained. The district court did not err in concluding that "as in *Schwartz* [*v. Esmark, supra* ], Plaintiff's self-serving explanation [that he was simply complying with the trial court's directive to state the circumstances surrounding his mistakes] lacks credibility." 1996 WL 441022 at *5.

Dr. Bradley stresses the liberal pleading policy of the Federal Rules, citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). He argues that since an amended complaint supersedes any prior pleadings, consistency is irrelevant, citing *King v. Atiyeh,* 814 F.2d 565 (9th Cir.1987) and *International Controls Corp. v. Vesco,* 556 F.2d 665 (2d Cir.1977); and that the court is obligated to accept the second amended complaint as filed and to construe the allegations in a manner most favorable to him. The district court observed that the second amended complaint was filed not as of right, but pursuant to leave to amend, and held that "the amended complaint may only allege 'other facts consistent with the challenged pleading.'" 1996 WL 441022 at *3 (quoting *Reddy,* 912 F.2d at 296 (internal citations omitted)). We agree that the court was not required to accept as true the inconsistent allegations in the second amended

complaint. Neither *Conley v. Gibson* nor the other cases cited by Dr. Bradley hold otherwise.

The district court's assessment of the second amended complaint is accurate and fair. We discern no abuse of the court's discretion in striking the changed and inconsistent factual allegations as false and sham. We affirm the district court's conclusion that Dr. Bradley had failed in his pleadings to state a claim for rescission based on mistake of fact or law.[3]

### FRAUD

■. Fraud is a ground for contract rescission. *See* Cal. Civ.Code § 1689(b)(1) (West 1997). The charge of actual fraud requires that the accused party made a material representation or omission with knowledge of its falsity, with the intent to deceive, or to induce the other party to enter into the contract. The accused party must have intentionally induced a misunderstanding of the contract terms, or known of it and fostered it. *See* Cal. Civ.Code § 1572 (West 1997).

■ Dr. Bradley alleged that Chiron defrauded him by failing to submit the issue of inventorship to the PTO, as Dr. Bradley expected under § 2.3 of the agreement. He also alleged that although there was no contact between Chiron and Dr. Bradley, Chiron fraudulently induced him to enter into the agreement by writing § 2.3 in a way that led him to believe that inventorship would be resolved by the PTO, despite the prohibition in § 2.2 against his maintaining an interfering patent application. Dr. Bradley thus acknowledged that his allegation of fraudulent misrepresentation by Chiron was based on his reading of the contract provisions, and not on any communication from Chiron. Chiron responds that any patent attorney could have advised Dr. Bradley on PTO procedures, and that Chiron had no special knowledge that it withheld. *Cf. Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 287 (9th Cir.1988) (plaintiffs' failure to inquire about the ramifications of arbitration

clause precluded fraud claim); *Lingsch v. Savage*, 213 Cal.App.2d 729, 29 Cal.Rptr. 201, 206 (1963) (rejecting fraud claim where alleged misrepresentations went to facts that were not "beyond the reach of the plaintiff").

The district court held that Dr. Bradley cannot allege that he was deceived as to whether or not the agreement allowed him to file an interference, because it explicitly precluded him from doing so. The court concluded that the statement of facts in the first amended complaint did not support the charge of fraud. There was no allegation that Chiron had exclusive knowledge, or that it withheld knowledge, or induced Dr. Bradley to enter into the contract, or presented a misleading interpretation. We agree with the district court's analysis.

■ Dr. Bradley also argues that he stated a claim of constructive fraud under Cal. Civ.Code § 1573 (West 1996). An action for constructive fraud requires a confidential or fiduciary relationship. *Odorizzi v. Bloomfield School District*, 246 Cal.App.2d 123, 54 Cal.Rptr. 533 (1966). Although Dr. Bradley states that there was a confidential collaboration between himself and Chiron, it is not alleged that a relationship of trust existed when the contract was entered into. Nor did Chiron have a duty to explain the contract terms to Dr. Bradley. *See Cohen*, 841 F.2d at 287 ("We know of no case holding that parties dealing at arm's length have a duty to explain to each other the terms of a written contract"). We do not discern error in this position. *See Racine & Laramie, Ltd. v. California Dep't of Parks and Recreation*, 11 Cal.App.4th 1026, 14 Cal.Rptr.2d 335, 339 (1992) (implied covenants of good faith and fair dealing are limited to assuring compliance with the express terms of the contract and can not be extended to create obligations not contemplated in the contract).

■ In the second amended complaint Dr. Bradley provided additional pleadings directed to the fraud claim. The district court had not authorized this amendment to the complaint, and declined to receive it. Dr.

---

3. The district court also discussed the substance of the second amended complaint, and observed that even if Dr. Bradley had obtained the legal advice he described therein, it was inconsistent with the plain language of the Settlement Agreement.

Bradley states that this is error, and that he perfected the fraud claim in his second amended complaint. We review this action for abuse of discretion, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331–32, 91 S.Ct. 795, 802–03, 28 L.Ed.2d 77 (1971); *see Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1530 (9th Cir.1995). The liberal pleading requirements of the Federal Rules encourage the grant of leave to amend, *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), unless such amendment would not cure the flaw in the pleadings. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995) (the court may deny leave to amend when the amendment would be futile).

In the first amended complaint the basic allegation of fraud was that the language of § 2.3 fraudulently induced Dr. Bradley to believe that the agreement contained a mechanism through which inventorship would be resolved. The only modification Dr. Bradley made in his second amended complaint was to add a paragraph that stated Chiron's failure to submit all of the documents prepared by Dr. Bradley to the PTO[4] in order to obtain a PTO opinion on inventorship without an interference proceeding. The district court held that the settlement agreement did not obligate Chiron to present any documents to the PTO, and that this additional allegation in the second amended complaint, if it were to be considered, was not sufficient to state a claim for rescission of the agreement on the ground of fraud.

We agree that the missing elements of a fraud claim were not cured by this additional allegation. Since the amendment would have been futile, the denial of leave to amend was not an abuse of discretion.

## FAILURE OF CONSIDERATION

■ California law permits rescission of an agreement "[i]f the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds." Cal. Civ. Code § 1689(b)(2) (West 1997). The right to rescission for failure of consideration exists if the failure is material or goes to the essence of the contract. *Wyler v. Feuer*, 85 Cal. App.3d 392, 149 Cal.Rptr. 626, 633 (1978).

■ Dr. Bradley conceded that the full monetary consideration was paid during the period before this suit was filed, although he states that the amount was much too low in view of the ensuing value of the patents. Failure of consideration was ascribed to Chiron's failure "to submit all material information regarding inventorship to the PTO, whether or not the mechanism in Section 2.3 of the agreement was effectual." The district court held that the Settlement Agreement gave Chiron discretion and that a discretionary act is not contractual consideration. The court stressed that the consideration was monetary, and that the provisions of § 2.3 were presented as obligations of Dr. Bradley and the CDC, not as obligations of Chiron. We agree that the district court correctly read the agreement, and that Dr. Bradley failed to state a claim for rescission based on failure of consideration.

## OTHER ISSUES

The district court did not discuss the question of whether the United States is an indispensable party, and other issues that were mooted by the dismissal of the complaint. Nor have we repeated all of the arguments raised on both sides, for they do not change the result.

No costs.

*AFFIRMED.*

---

4. Dr. Bradley acknowledged that Chiron submitted some information to the PTO, but stated that it was insufficient and violated the duty of disclosure. Chiron responded that the prosecution history shows that documents written by Dr. Bradley and CDC, stating their position on inventorship, were presented to the examiner.