# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PAE GOVERNMENT SERVICES, INC., a
California corporation,
             *Plaintiff-Appellant,*

             v.

MPRI, INC., a Delaware
corporation,
             *Defendant-Appellee.*

No. 06-56438

D.C. No.
CV-06-00964-RGK

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
October 15, 2007—Pasadena, California

Filed December 18, 2007

Before: Alex Kozinski, Chief Judge, A. Wallace Tashima
and M. Margaret McKeown, Circuit Judges.

Opinion by Chief Judge Kozinski

16483

## COUNSEL

Richard E. Drooyan, Mark H. Epstein, Katherine K. Huang and E. Dorsey Heine, Munger, Tolles & Olson LLP, Los Angeles, California, for the plaintiff-appellant.

Kathleen M. Wood and Nicholas P. Connon, Connon Wood Sheidemantle LLP, Los Angeles, California, for the defendant-appellee.

## OPINION

KOZINSKI, Chief Judge:

We consider whether a district court may strike allegations from an amended complaint because they contradict an earlier iteration of the same pleading.

### Facts

PAE Government Services, Inc. and MPRI, Inc. sell services to government agencies. The companies agreed to work together to submit a bid for a government contract, and signed a "Teaming Agreement" that divided duties between them.

MPRI submitted the bid as "prime contractor" and won. MPRI thereafter refused to subcontract to PAE all the work specified in the Teaming Agreement—or so PAE claimed in its original complaint.

The district court dismissed that complaint because, in its view, the Teaming Agreement is no more than an "agreement to agree." The agreement is governed by Virginia law, and the district court held that Virginia won't enforce agreements to agree.[1] PAE thereupon amended its complaint to allege that, after MPRI won the government contract, it entered into a second agreement with PAE. According to the amended complaint, this second agreement was "confirmed" in "written communications" and by the parties' "course of conduct." The amended complaint also added a promissory estoppel claim against MPRI.

The district court found PAE's new allegations of a second agreement with MPRI to be "sham pleadings that contradict allegations made in the original Complaint." In particular, the allegation of a second agreement contradicted PAE's original claim that "[f]ollowing the award of the . . . [government contract], MPRI failed and refused to enter into a subcontract with PAE." The district court therefore struck the new allegations from PAE's First Amended Complaint. After holding that Virginia law also barred PAE's promissory estoppel claim, the district court dismissed the complaint.

PAE amended its complaint yet again, adding more detail about its second agreement with MPRI. The district court remained unmoved; it deemed the Second Amended Complaint to be "merely a revision of the [First Amended Complaint] which alleges more specific facts evidencing the existence of a subsequent subcontract between the parties."

---

[1] PAE has not appealed that ruling, so we don't consider the district court's interpretation of Virginia law or its application of that law to the Teaming Agreement.

The district court struck the additional allegations and dismissed the complaint—this time, with prejudice.

## Analysis

**[1] 1.**    By striking the allegations in PAE's amended complaint as a "sham," the district court effectively resolved those allegations on the merits. In other words, it determined that the allegations in the amended complaint were unfounded because they contradicted (in the district court's view) earlier allegations PAE made in its original complaint. But the Federal Rules of Civil Procedure do not authorize a district court to adjudicate claims on the merits at this early stage in the proceedings; the court may only review claims for legal sufficiency. *See* Fed. R. Civ. P. 12(b). Adjudication on the merits must await summary judgment or trial. Rule 12(f) does authorize the court to strike "any insufficient defense," which this is clearly not, and "any redundant, immaterial, impertinent, or scandalous matter." PAE's allegations of a second agreement are certainly not any of those things; they are normal contract claims that would not be in the least bit objectionable, but for the fact that they appeared, in the district court's view, to contradict allegations in an earlier version of the complaint.

**[2]** Which brings us to the meat of the coconut: Does the fact that an amended complaint (or answer) contains an allegation that is apparently contrary to an earlier iteration of the same pleading render the later pleading a sham? The answer is: not necessarily. To begin with, allegations in the two versions of the complaint might not conflict at all. Here, for example, PAE explains that the allegations in the original complaint referred to MPRI's refusal to sign the specific subcontract contemplated in the Teaming Agreement; the amended complaint, by contrast, referred to an entirely different agreement reached over email. Only a careful comparison of the two documents, rather than a glance at isolated provisions, can determine whether PAE's account is plausible. We have not undertaken such a comparison, however, nor need

we do so to resolve this case. Even assuming that the two pleadings were irreconcilably at odds with each other, this would not, by itself, establish that the later pleading is a sham.

At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns. In recognition of these uncertainties, we do not require complaints to be verified, *see* Fed. R. Civ. P. 11(a), and we allow pleadings in the alternative—even if the alternatives are mutually exclusive. As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported. This rarely means that those allegations were brought in bad faith or that the pleading that contained them was a sham. Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. We do not call this process sham pleading; we call it litigation.[2]

**[3]** This does not mean, of course, that allegations in a complaint can never be frivolous, or that a district court can never determine that a complaint or answer was filed in bad

---

[2]PAE's earlier allegation may or may not have relevance to further proceedings in the case, including any under Rule 11. To the extent the superseded pleading is verified, it becomes something akin to a sworn declaration, and the party that presented it may suffer a loss of credibility before the trier of fact, which may be less inclined to believe a party that has sworn to inconsistent material statements. Also, a party's representations may judicially estop it from taking a contrary position in later proceedings. We mention this only as a theoretical possibility in the interest of completeness, not because we believe it could apply here. Indeed, the requirements for judicial estoppel are strict, *see Fredenburg* v. *Contra Costa County Dep't of Health Servs.*, 172 F.3d 1176, 1180 (9th Cir. 1999), and nothing we have seen in this record suggests those requirements are met here.

faith. But the mechanism for doing so is in Rule 11, which deals specifically with bad faith conduct. MPRI points to Rule 11 as a source of the district court's authority for the order it entered here. But Rule 11 can play no role in this case because the district court did not invoke the rule's procedural safeguards, nor did it employ the rule's substantive standard, which would have required a finding that PAE or its counsel acted in bad faith.[3] The district court has no free-standing authority to strike pleadings simply because it believes that a party has taken inconsistent positions in the litigation. Rather, the district court's powers are generally limited to those provided by the Federal Rules of Civil Procedure. Though the Federal Circuit reached a contrary conclusion in *Bradley* v. *Chiron Corp.*, 136 F.3d 1317, 1326 (Fed. Cir. 1998), no other court of appeals has followed that decision, and we decline to do so.[4]

---

[3]A prior version of Rule 11 did authorize a district court to "strike pleadings . . . as sham and false," but this provision was eliminated in 1983. *See* Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment; 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1336.3 (3d ed. 2004). MPRI relies on one of our Rule 11 precedents, *Ellingson* v. *Burlington Northern, Inc.*, 653 F.2d 1327 (9th Cir. 1981), but *Ellingson* is no longer good law after the amendment to Rule 11.

The Advisory Committee notes to Rule 11 suggest that the 1983 amendment was designed to avoid precisely the type of error committed by the district court here: "confus[ing] the issue of attorney honesty with the merits of the action." Though false factual assertions may be evidence of bad faith, they are usually not; generally, they are the result of ignorance, misunderstanding or undue optimism. If bad faith is found, in accordance with the procedures outlined in Rule 11, the district court has wide latitude to impose sanctions, including the striking of the offending pleading. *See, e.g.*, *Morris* v. *Wachovia Sec., Inc.*, 448 F.3d 268, 284 (4th Cir. 2006). But absent a finding of bad faith, factual allegations in the complaint (or answer) must be tested through the normal mechanisms for adjudicating the merits.

[4]Ironically, *Bradley* purported to rely on two of our cases. One of them is *Ellingson*; for reasons explained p.16489 n.3 *supra*, that case does not survive the amendments to Rule 11. The other case *Bradley* relied on was

**[4]** The short of it is that there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading. The district court's order, which is based on the contrary conclusion, must be reversed.

**[5] 2.**    Because MPRI made its alleged promises in connection with the Teaming Agreement, that agreement's choice-of-law clause governs PAE's promissory estoppel claim. *See Nedlloyd Lines B.V.* v. *Superior Court*, 3 Cal. 4th 459, 470 (1992) (agreement's choice-of-law clause applies to "all causes of action arising from or related to that agreement"); *Olinick* v. *BMG Entm't*, 138 Cal. App. 4th 1286, 1300 (Ct. App. 2006) (choice-of-law clause applies to claims that are "inextricably intertwined with the construction and enforcement" of the contract). The Teaming Agreement chooses Virginia law, which doesn't recognize promissory estoppel as a cause of action. *W.J. Schafer Assocs., Inc.* v. *Cordant, Inc.*, 254 Va. 514, 521 (1997). We see no reason not to enforce the agreement's choice of law: Virginia has a substantial relationship to MPRI (which has its principal place of business there), and enforcing the clause won't violate a fundamental policy of California. *See Gamer* v. *duPont Glore Forgan, Inc.*, 65 Cal. App. 3d 280, 287-88 (Ct. App. 1976) (quoting Restatement (Second) Conflict of Laws § 187). The district court properly dismissed PAE's promissory estoppel claim.

---

*Reddy* v. *Litton Industries, Inc.*, 912 F.2d 291 (9th Cir. 1990), a case that stands for the unremarkable proposition that, where a complaint cannot be cured by amendment, the district court may deny leave to amend under Rule 15. *Id.* at 296. We see no analogy between that situation and the one presented here. *See Foman* v. *Davis*, 371 U.S. 178, 182 (1962) ("futility of amendment" is reason to deny leave to amend).

\*       \*       \*

Rule 12 provides no authority to dismiss "sham" pleadings. If a party believes that its opponent pled in bad faith, it can seek other means of redress, such as sanctions under Rule 11, 28 U.S.C. § 1927 or the court's inherent authority. *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).

**REVERSED in part, AFFIRMED in part and REMANDED. No costs.**