**DOMTAR NEWSPRINT SALES LIMITED**

v.

**The UNITED STATES.**

**No. 48–69.**

United States Court of Claims.

Dec. 11, 1970.

Richard J. Hiegel, New York City, for plaintiff; George G. Tyler, New York City, attorney of record.

Frances M. Foltz, Washington, D. C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge:

Plaintiff, a Canadian corporation not engaged in trade or business within the United States, brought this action to re-

cover an alleged overpayment of Federal income taxes and interest penalties for the year 1960, plus statutory interest.

The facts are stipulated and show that this controversy arose by reason of a property distribution from The Wright Company, Inc. of all the issued and outstanding stock of The Alberni Paper Company, Inc. to plaintiff in January of 1960. Wright, a Delaware corporation engaged in business within the United States, is wholly owned by plaintiff and, in turn, Wright owned all of the stock of Alberni, a New York corporation also engaged in business within the United States. The fair market value of the Alberni stock on the date of distribution was $450,000, but its adjusted basis in the hands of Wright immediately before the distribution was $25,000.

Wright withheld and paid to the Internal Revenue Service $1,250 as Federal income tax due from plaintiff on the distribution for the 1960 tax year. The $1,250 was computed by applying the 5 percent tax rate provided for in the Income Tax Convention then in force between the United States and Canada against the adjusted basis of the stock in the hands of Wright—$25,000.

After March 15, 1961, the Internal Revenue Service determined that Wright should have withheld and paid income taxes at the rate of 5 percent on $450,-000, the fair market value of the stock.

On May 28, 1965, plaintiff paid the deficiency in the amount of $26,660.89 of which $5,410.89 was interest. On May 3, 1968, plaintiff filed with the proper office a return on Form 1120–F (entitled "United States Income Tax Return of Foreign Corporation—1960"). The return showed that plaintiff had overpaid the tax in the amount of $21,250. Plaintiff then filed a claim on May 14, 1968, for refund of the taxes and interest paid in 1965. Since the claim was neither granted nor denied within 6 months, this suit was filed.

The case is before the court on the parties' cross motions for summary judgment, which present two questions for decision—(1) whether plaintiff's action is barred by the statute of limitations because of the failure to file a claim for refund within the time specified by Section 6511 of the Internal Revenue Code of 1954, and (2) whether plaintiff was subject to the tax on the fair market value of the property received by it as a dividend in kind, or only on the lesser of the fair market value or the adjusted basis of the property. For the reasons stated, we resolve both issues in favor of the plaintiff.

**I**

*The Statute of Limitations Issue*

The controlling statute is Section 6511 of the Internal Revenue Code of 1954.[1]

---

1. § 6511. *Limitations on credit or refund*
    "*(a) Period of limitation on filing claim.*—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.
    "*(b) Limitation on allowance of credits and refunds.*—

"*(1) Filing of claim within prescribed periods.*—No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.
    "*(2) Limit on amount of credit or refund.*—
        "*(A) Limit where claim filed within 3-year period.*—If the claim was filed by the taxpayer during the 3-year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return. If the tax was required to be

As stated above, plaintiff paid the deficiency in issue on May 28, 1965, but did not file a return for the year 1960 until May 3, 1968. The claim for refund was filed on May 14, 1968, less than 3 years from the time the return was filed, and the amount of the refund claimed did not exceed the tax paid within the 3-year period preceding the filing of the claim for refund.

Relying on the last clause of the first sentence of section 6511(a), defendant contends that the statute of limitations bars plaintiff's refund claim, because it was not filed within 2 years of the payment of the deficiency. Defendant also argues that plaintiff never made a return, because the form filed did not fulfill the function of a return which is to provide the Government with the operative facts bearing on plaintiff's tax liability. Thus, the defendant maintains that, since the tax liability had been previously determined and satisfied, the filing of the return was a useless act— a mere attempt to extend the statute of limitations on refunds.

Plaintiff answers that it filed a return, which it was required to file under the circumstances, and that the plain language of section 6511(a) allows a taxpayer 3 years in which to claim a refund after the return is filed. Plaintiff also points out that defendant's position is contrary to the published rulings of the Internal Revenue Service.

Assuming for the purpose of this discussion that a bona fide return was filed by plaintiff, we hold that section 6511(a) allowed 3 years from the date the original but late return was filed to claim the refund.

The language of section 6511(a) supports our interpretation. Here, the tax was imposed by the Internal Revenue Code, section 881. Second, although defendant initially suggested that no return was required of plaintiff, it later admitted one was required. We think this is correct in light of Treas.Reg. 1.6012–2(g) (1) requiring that a return be filed if the withholding is insufficient to cover the taxes due, or if the taxpayer desires to claim a refund. Whether or not plaintiff is right on the merits, it is plain that the regulation required a return to be filed. Third, this was the one and only return of plaintiff. Thus, the cases dealing with amended returns are inapposite.

Moreover, we agree that defendant's position is inconsistent with two published rulings. The first of these is Mim. 4814, 1938–34–9508. The ruling was an interpretation of section 322(b) (1) and (2) of the Revenue Act of 1934, as amended, which contains substantially the same provisions as section 6511(a) and 6511(b) (2) (A).[2]

After referring to the report of the Senate Committee on Finance, which accompanied the revenue bill of 1934, the ruling stated:

> The policy written by the Congress into section 322 of the Revenue Act of 1934 and the corresponding provisions of the Revenue Acts of 1936 and 1938 may be stated to be that the 3-year period of limitation from the date of the filing of the return upon the allowance of credits or refunds, or the filing of claims therefor, is applicable in any case in which a return is filed by the taxpayer, whether required or not, or

paid by means of a stamp, the amount of the credit or refund shall not exceed the portion of the tax paid within the 3 years immediately preceding the filing of the claim.

"(B) *Limit where claim not filed within 3-year period.*—If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.

"(C) *Limit if no claim filed.*—If no claim was filed, the credit or refund shall not exceed the amount which would be allowable under subparagraph (A) or (B), as the case may be, if claim was filed on the date the credit or refund is allowed."

2. Defendant says that the second sentence of section 322(b) (1) is, except for a rearrangement of words, the same as the second clause of the first sentence of section 6511(a) upon which defendant relies here. [Def.Rep.Br. 7]

whether timely or delinquent; but the amount allowable is limited to the tax paid within the three years immediately preceding the filing of the claim, or, if no claim was filed, then during the three years immediately preceding the allowance of the credit or refund. * * * [Mim. 4814, 1938-2 C.B. 96, 97.]

The second is Rev.Rul. 57-354, 1957-2 C.B. 913. The ruling dealt with section 322(b) of the 1939 Code, which is substantially equivalent to section 6511(a), as amended in 1958. It covers the question as to whether an untimely return filed after the 2-year period had expired entitled the taxpayer to the benefit of the 3-year period when his return discloses no tax liability. The ruling states:[3]

In the instant case, delinquent returns were filed by the taxpayer for the purpose of recovering taxes withheld and paid as estimated taxes for the years 1951, 1952 and 1953. These amounts are presumed to have been paid on March 15 of each of their following years. The returns, which disclosed no tax liability, were filed by the taxpayer in October 1955 for the year 1951 and December 1955 for the years 1952 and 1953.

Section 322(b) (1) of the 1939 Code, relating to the limitation on allowance of refunds and credits, provides as follows:

(1) Period of limitation.—Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever, of such periods expires the later. If no return is filed by the taxpayer, then no credit or refund shall be allowed or made after two years from the time the tax

was paid, unless before the expiration of such period a claim therefor is filed by the taxpayer.

Section 322(b) (2) of the 1939 Code relates to the limit on the amount of credit or refund and provides that, if a return was filed by the taxpayer and the claim was filed within three years from the time the return was filed, the amount of credit or refund shall not exceed the portion of the tax paid during the three years immediately preceding the filing of the claim.

Under section 322(e) of the 1939 Code, prepayments of tax made through the withholding of tax at the source, or payments of estimated tax, prior to the due date of the tax are considered as having been paid on the last day prescribed by law for the payment of the tax by the taxpayer, which was March 15 if he filed his return on the basis of a calendar year.

The status of a claim for refund must in the final analysis be determined in the light of the facts as they exist at the time it is filed. Thus, if no return was filed prior to the filing of a claim for refund, the two-year period of limitation is applicable in determining the timeliness of the claim. However, if a return was filed prior to the filing of a claim for refund, the three-year period of limitation governs.

Based on the facts in the instant case, a refund of any overpayment of tax for the year 1951 is barred since the return, which also constitutes a claim, was not filed within three years from the presumptive date of payment, March 15, 1952. The returns for the years 1952 and 1953 were filed within three years of the presumptive dates of payment and therefore such returns, pursuant to the taxpayer's election to have them treated as claims,

---

3. When the ruling was issued, section 6511 (a) provided that the 3-year period for filing claims for refund ran from the due date of the return. However, Section 82 of the Technical Amendments Act of 1958 amended the statute to make it clear that the actual date for filing the return starts the 3-year statute under section 6511(a). In Rev.Rul. 66-118, 1966-1 C.B. 290, the last three paragraphs of Rev.Rul. 57-354, relating to the 1954 Code before the 1958 amendment, were superseded.

were filed within the statutory period applicable with respect to both the time in which a claim must be made and the limit on the amount allowable.

The Government attempts to distinguish these rulings on the ground that they relate only to situations where there has been no assessment and payment of a deficiency prior to the filing of a late return. However, in view of the broad statements in the rulings and the plain language of section 6511(a), we cannot agree with the Government's contention. Moreover, even if the rulings had not been published, we think that plaintiff's position is supported by the Report of the House Ways and Means Committee on the amendment to section 6511(a) in the Technical Amendments Act of 1958, 72 Stat. 1606. The report of the committee stated:

> Subsections (a) and (b) of section 71 of the bill amend section 6511 of the 1954 Code (relating to limitations on credit or refund) to provide that a claim for credit or refund may be filed within 3 years from the date the return was *actually filed.* Under existing law a claim for refund or credit must be filed within 3 years from the due date of the return (determined without regard to any extension), whereas an assessment may be made within 3 years from the date the return was actually filed. *Thus, the amendment conforms the period on filing claim for credit or refund more nearly to the period on assessment.* [Emphasis supplied.] [H.R. 775, 85th Cong. 1st Sess. § 71 (1957).]

To us, this is a clear indication of a congressional intent that, if the Commissioner of Internal Revenue is not barred by the statute of limitations on assessments (referring to section 6501(a)) from asserting a deficiency, a taxpayer should have the same period of time to claim a refund after the filing of a return as the Commissioner has for assessments—3 years.

Our interpretation of section 6511(a) does not, as the Government contends, render the statute of limitations ineffective nor permit a taxpayer to file a return and then a valid claim for refund at any time. Section 6511(b) limits the recovery to taxes paid within 3 years of the date of filing the claim for refund. Therefore, it will be an unusual case where section 6511(b) will not bar recovery.

Finally, we reject the Government's argument that once a taxpayer pays a deficiency before he files a return, he remains ever afterward a no-return taxpayer. As we noted above, a return was required. Since plaintiff filed a return that was required by the regulations, we cannot find that plaintiff was a no-return taxpayer.

Nor can it be said that plaintiff's filing of a return on Form 1120–F was a useless act, even if its only purpose was to acquire more time in which to claim a refund. One function of the return was to start the running of the statute of limitations on assessments, section 6501 (a). Although plaintiff paid the deficiency assessment in this case, there is nothing in the Code which would have prevented the Commissioner from asserting a second deficiency until a return had been filed and 3 years thereafter had expired.[4]

We hold, therefore, that plaintiff's claim for refund was timely.[5]

## II

### *The Section 301 Issue* [6]

■ It is undisputed that plaintiff, the distributee shareholder, is a corpora-

---

4. The authority to tax was created by section 881. The assessment and collection procedures do not depend upon personal jurisdiction.

5. In Garvin v. United States, 111 F.Supp. 265, 124 Ct.Cl. 781 (1953), this court implicitly reached the same conclusion.

6. Section 301 of the Internal Revenue Code of 1954 provides in pertinent part as follows:

"§ *301. Distributions of property.*

\*     \*     \*     \*     \*

"*(b) Amount Distributed.*—

tion; that the property distributed to plaintiff was a dividend in the form of the Alberni stock, and that the adjusted basis of the stock in the hands of Wright, the distributing corporation, was $25,000 immediately before the distribution. Therefore, it is apparent that section 301(b) (1) (B) imposes the tax upon the $25,000, as plaintiff contends, unless that section does not apply to foreign corporations not engaged in trade or business within the United States, as defendant contends. Relying upon Rev. Rul. 57–470, 1957–2 C.B. 608, the Government makes the following arguments in support of its position:

1. The language of sections 871 and 881 and sections 1441 and 1442 and their legislative history indicate a congressional intent to tax nonresident aliens and nonresident foreign corporations in the same manner. In this case, since the fair market value of the dividend would be taxed to a nonresident individual, the fair market value of the dividend should be taxed to the foreign nonresident corporation.

> "*(1) General Rule.*—For purposes of this section, the amount of any distribution shall be—
> "*(A) Noncorporate distributees.*—If the shareholder is not a corporation, the amount of money received, plus the fair market value of the other property received.
> "*(B) Corporate distributees.*—If the shareholder is a corporation, the amount of money received, plus whichever of the following is the lesser:
> "(i) the fair market value of the other property received; or
> "(ii) the adjusted basis (in the hands of the distributing corporation immediately before the distribution) of the other property received, increased in the amount of gain to the distributing corporation which is recognized under subsection (b) or (c) of section 311.
> \*    \*    \*    \*    \*
> "*(c) Amount taxable.*—In the case of a distribution to which subsection (a) applies—
> "*(1) Amount constituting dividend.*—That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.

2. The purpose of the enactment of section 301(b) (1) (B) was to mitigate the effect on the revenue resulting from the intercorporate dividend deduction, which would have allowed a corporation receiving property dividends to get a stepped-up basis at a low tax cost. With respect to domestic corporations, the effect of the provision is to defer the tax on the difference between the basis of the property and its fair market value until the distributees sell their property. At that time, the full amount of appreciation is subject to the corporate tax as capital gains or ordinary income. Foreign corporations not engaged in business in the United States are not usually subject to the tax on the gains realized upon the sale of property. Treas.Reg. 1.881–2(b), (c) and 1.1441–2(a) (3). Therefore, Congress could not have intended section 301(b) (1) (B) to apply to such corporations, since the appreciation will escape taxation.

The same basic contentions were made by the Government and rejected in the recent case of Newman & Co. v. United States, 423 F.2d 49 (2d Cir. 1970).[7] Al-

> \*    \*    \*    \*    \*
> "*(d) Basis.*—The basis of property received in a distribution to which subsection (a) applies shall be—
> "*(1) Noncorporate distributees.*—If the shareholder is not a corporation, the fair market value of such property.
> "*(2) Corporate distributees.*—If the shareholder is a corporation, whichever of the following is the lesser:
> "(A) the fair market value of such property; or
> "(B) the adjusted basis (in the hands of the distributing corporation immediately before the distribution) of such property, increased in the amount of gain to the distributing corporation which is recognized under subsection (b) or (c) or section 311."

7. We find *Newman* indistinguishable from this case. The facts differ only in that *Newman's* plaintiff was the withholding agent. But the issue of the application of section 301(b) (1) (B) to a foreign corporation not engaging in business in the United States is the same.

though the Government challenges the correctness of that decision and urges us not to follow it, we agree with the court's reasoning and the result it reached in that case. Therefore, we find it unnecessary to do more than set forth the following summary of the Second Circuit's conclusions and to adopt them as the basis for our decision in this case:

1. In order to determine the "amounts received" or the gross income taxable under section 881, it is necessary to refer to other sections of the Code where gross income is defined. Thus, section 301(b) (1) (B) defines the amount to be included in gross income when corporate distributees receive dividends of property other than money.

2. Section 1442 is only a tax collection provision. The reference in section 1442, dealing with withholding for foreign corporations, to section 1441, dealing with withholding for nonresident aliens, is simply to avoid repetition of identical income items. It is not intended as a means of calculating the items involved. Nor does it indicate any intent on the part of Congress to treat foreign corporations and individuals in the same manner. The legislative history of sections 1441 and 1442 from 1936 committee reports is not indicative of the congressional intent as to the application of section 301, which was enacted long afterward in 1954.[8]

3. The problem of revenue loss from applying section 301(b) (1) (B) to foreign corporations not engaged in business within the United States was called to the attention of the House Ways and Means Committee by an advisory group, which in 1958 recommended legislation to close the apparent loophole. The failure of Congress to act on the recommendation provides no conclusive evidence of congressional intent. But the recommendation shows a recognition by a group of tax experts that the statute purports to apply the standards of sec-

tion 301(b) (1) (B) to foreign as well as to domestic corporations.

4. Section 301(b) (1) (B) on its face applies to all corporations. Any judicial remedy that might be fashioned to close the alleged loophole could not deal effectively or completely with the problem, which requires congressional action. Therefore, it is concluded that section 301(b) (1) (B) applies to foreign corporations not engaged in business within the United States.

Plaintiff's motion for summary judgment is granted, and defendant's cross-motion for summary judgment is denied. Plaintiff is entitled to recover the $21,250 additional tax and the interest which it paid on May 28, 1965, plus statutory interest thereon, and judgment is entered to that effect. The amount of the recovery will be determined as provided in Rule 131(c).

---

8. The same observation is applicable to the legislative history of sections 871 and 881, which the Government cites us to from 1936 and 1940 committee reports.