**George C. GEORGEFF and Denise S. Georgeff, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

No. 05–385T.

United States Court of Federal Claims.

Aug. 29, 2005.

George C. Georgeff and Denise S. Georgeff, Gahanna, Ohio, pro se.

Bart D. Jeffress and William K. Drew, Trial Attorneys, Tax Division; Mildred L. Seidman, Chief, Court of Federal Claims Section; Eileen J. O'Connor, Assistant Attorney General, United States Department of Justice, Washington, D.C., for the defendant.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

The plaintiffs, George C. Georgeff and Denise S. Georgeff, seek a federal income tax refund in the amount of $27,433.86 for tax year 1997. Plaintiffs are representing themselves *pro se*, however, on plaintiff's 1997 tax return, Mr. Georgeff indicates that he is an attorney. The plaintiffs made an estimated tax payment of $4500.00 on January 19, 1998 and a further estimated tax payment of $25,000.00 on April 15, 1998. Internal Revenue Service (IRS) records verify that the sum total of estimated tax declarations and estimated tax credits transferred into the plaintiffs' account for the 1997 tax year was $29,500.00. The parties agree that the plaintiffs did not make any other payments on their account for the 1997 tax year. While the due date for the 1997 tax return was April 15, 1998, the parties concur that the plaintiffs signed their tax return for the 1997 tax year on September 24, 2002. The IRS records show the tax return as having been filed on September 25, 2002, over four years after the due date. The plaintiffs have not offered any reasons to justify their delayed filing, including no indication that they applied for, or were granted, any extension for filing their 1997 tax return.

The plaintiffs' 1997 tax return, filed on September 25, 2002, reported a total adjusted gross income for the plaintiffs of $16,590.80. Based on this income, the total tax liability on the part of the plaintiffs was reported by them as $2066.14, composed of an income tax liability of $656.00 and a self-employment tax liability of $1410.14. The plaintiffs, therefore, requested a refund based on their computation of an overpayment of $27,433.86 on their 1997 tax return ($29,500.00 paid by the plaintiffs in two estimated tax payments on January 19, 1998 and April 15, 1998, minus $2066.14 total tax liability for 1997 tax year). In a letter dated March 21, 2003, the Internal Revenue Service notified the plaintiffs of its disallowance of their refund claim for $27,433.86.

The plaintiffs contend that the loss generating their refund request for tax year 1997 arose out of an alleged, worthless security in which plaintiffs had invested. Specifically, on Schedule D of the plaintiffs' 1997 tax return filed on September 25, 2002 for the 1997 tax year, the plaintiffs highlighted a long-term capital loss of $22,499.00 on their 5000 Sky Team investment, which they had purchased on May 30 and September 30, 1996, for a total of $22,500.00, and sold on November 1, 1997 for $1.00. The sale occurred before the April 15, 1998 due date for plaintiffs' 1997 tax return. Citing the Internal Revenue Service Code (IRC), 26 U.S.C. § 6511(d)(1) (2000), plaintiffs contend, nonetheless, that since their claim for a tax refund is based on an overpayment of tax on account of losses from bad debts and worthless securities, they are entitled to an extended statute of limitations of seven years to file their refund claim.

In addition, plaintiffs broadly challenge other sections of the Internal Revenue Code,[1] specifically those governing income tax assessment and collection, as "so confusing" and, therefore, "void for vagueness" and "unconstitutional." The plaintiffs' complaint also states that the IRS' failure to refund the plaintiffs' overpayment of income taxes for the 1997 tax year is "an unconstitutional taking of property without due process and contrary to established law and precedent." The plaintiffs further argue that the United States government does not own estimated tax payments upon receipt, but, rather, that the government simply holds such monies until a taxpayer has filed a tax return demonstrating the amount he or she owes in taxes. In addition, the plaintiffs contend that the submission of estimated tax payments constitutes the making of a contractual relationship between the United States and the taxpayer. Finally, the complaint asserts that not only has the IRS imposed an unlawful and undue penalty on the plaintiffs by failing to refund the monetary amount included in plaintiffs'

---

1. Unless otherwise noted, all tax code references are to the Internal Revenue Code of 1986 (26 U.S.C.), as amended.

refund claim, but the IRS also has failed to use the tax payments which the plaintiffs made in excess of their 1997 income tax liability to satisfy their unpaid income tax assessments for years prior to 1997. The plaintiffs seek a refund of their alleged $27,433.86 overpayment, along with interest from the date their estimated payments were made to the present.

The instant case was initiated in this court when the plaintiffs filed their complaint for a tax refund. In response, the defendant filed a motion to dismiss the complaint for lack of jurisdiction and for failure to state a claim upon which relief could be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). In their response to defendant's motion to dismiss, plaintiffs included, for the first time, a copy of their 1997 tax return, which was not attached to their complaint. Therefore, the defendant filed a reply, proposing that its RCFC 12(b)(6) motion to dismiss be treated as a motion for summary judgment, since the plaintiffs had submitted and the government had responded to evidence (the plaintiffs' 1997 tax return) outside the original pleading. *See* RCFC 12(b). Based on a review of all the filings submitted by the parties, the court deems oral argument unnecessary.

## DISCUSSION

The plaintiffs are proceeding *pro se*. Normally, *pro se* plaintiffs are entitled to liberal construction of their pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *see also Hughes v. Rowe*, 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied*, 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). The United States Court of Appeals for the Federal Circuit has similarly stated that "the pleadings of *pro se* litigants should be held to a lesser standard than those drafted by lawyers when determining whether the

complaint should be dismissed for failure to state a claim because '[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims.'" *Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed.Cir.2002) (quoting *Hughes v. Rowe*, 449 U.S. 5, 15, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)), *cert. denied*, 537 U.S. 823, 123 S.Ct. 110, 154 L.Ed.2d 33 (2002). However, "there is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his pleading... 'A complaint that is ... confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation ....'" *Scogin v. United States*, 33 Fed.Cl. 285, 293 (1995) (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775–76 (7th Cir.1994)) (citations omitted); *see also Merritt v. United States*, 267 U.S. 338, 341, 45 S.Ct. 278, 69 L.Ed. 643 (1925) ("The petition may not be so general as to leave the defendant in doubt as to what must be met.") (citations omitted). "This latitude, however, does not relieve a *pro se* plaintiff from meeting jurisdictional requirements." *Bernard v. United States*, 59 Fed.Cl. 497, 499, *aff'd*, 98 Fed.Appx. 860, 2004 WL 842679 (Fed.Cir.), *reh'g denied* (2004).

Although these plaintiffs have filed their complaint *pro se*, as noted above, the plaintiff, George C. Georgeff, lists his occupation as that of an attorney on his 1997 tax return. The court, nonetheless, has construed the plaintiffs' confusing filings liberally and has attempted to give its best efforts to extract the legal theories plaintiffs appear to assert. The court is disappointed, however, that, as an attorney, Mr. Georgeff has not attempted to understand the basic jurisdictional requirements for filing in this court and has raised arguments long rejected by the federal courts.

Defendant has filed a motion requesting dismissal of selected counts of the plaintiffs' complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), including count two, taking property without due process; count six, abuse of the IRS' discretion for refusal to credit estimated tax payments to former tax liabilities; and count eight,

alleged tortious damage to plaintiffs by the IRS. Defendant also argues that plaintiffs have failed to state claims upon which relief can be granted in counts one, three and five of the complaint, which allege the IRS' improper failure to refund estimated tax payments, and in count four, which alleges that the United States tax laws are vague and unconstitutional.

Subject matter jurisdiction may be challenged at any time by the parties, by "the court *sua sponte*," and "even on appeal." *Fanning, Phillips, Molnar v. West*, 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir. 1993), *reh'g denied* (1993)); *see also United States v. Newport News Shipbuilding and Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed. Cir.1991). A plaintiff must establish jurisdiction by a preponderance of the evidence. *See Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Thomas v. United States*, 56 Fed.Cl. 112, 115 (2003); *Martinez v. United States*, 48 Fed.Cl. 851, 857 (2001), *aff'd in part*, 281 F.3d 1376 (Fed.Cir.), *reh'g denied* (2002); *Bowen v. United States*, 49 Fed.Cl. 673, 675 (2001), *aff'd*, 229 F.3d 1383 (Fed.Cir.2000); *Vanalco, Inc. v. United States*, 48 Fed.Cl. 68, 73 (2000); *Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir.1996) (table).

In addition, a court may dismiss a plaintiff's claims for failure to state a claim when no additional proceedings would enable the plaintiff to prove facts entitling him or her to prevail. *See New York Life Ins. Co. v. United States*, 190 F.3d 1372, 1377 (Fed.Cir.1999). "A motion to dismiss under Rule [12(b)(6)] for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy." *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998); *see also Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 793–94 (Fed.Cir.2000) (the particular facts of the case did not support a *sua sponte* dismissal for failure to state a claim); *Constant v. United States*, 929 F.2d 654, 657 (Fed.Cir.) ("Nor is due process violated by a dismissal, even *sua sponte*, for failure to state a

claim.... [N]o additional proceedings could have enabled [plaintiffs] to prove any set of facts entitling him to prevail on his claim for relief."), *cert. denied*, 501 U.S. 1206, 111 S.Ct. 2799, 115 L.Ed.2d 973 (1991).

When construing the pleadings pursuant to a motion to dismiss for reasons of RCFC 12(b)(1) or 12(b)(6), the court should grant the motion only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Brubaker Amusement Co. v. United States*, 304 F.3d 1349, 1355 (Fed.Cir.2002), *cert. denied sub nom. Penn Triple S v. United States*, 538 U.S. 921, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003); *Leider v. United States*, 301 F.3d 1290, 1295 (Fed.Cir.), *reh'g denied, reh'g en banc declined* (2002), *cert. denied*, 538 U.S. 978, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003); *Conti v. United States*, 291 F.3d 1334, 1338 (Fed.Cir.2002), *cert. denied*, 537 U.S. 1112, 123 S.Ct. 904, 154 L.Ed.2d 785 (2003); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000); *Consol. Edison Co. v. O'Leary*, 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied sub nom. Consol. Edison Co. v. Pena*, 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *see also New Valley Corp. v. United States*, 119 F.3d 1576, 1579 (Fed.Cir.), *reh'g denied, reh'g en banc declined* (1997); *Gould, Inc. v. United States*, 67 F.3d 925, 929–30 (Fed.Cir.1995); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied*, 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir.1989), *cert. denied*, 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996); *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion [to dismiss] must be denied.' "); *RCS Enters., Inc. v. United States*, 46 Fed.Cl. 509, 513 (2000).

Pursuant to RCFC 8(a)(1) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a

plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.), *reh'g denied* (1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). "Conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed.Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding a motion to dismiss based on a lack of subject matter jurisdiction or failure to state a claim upon which relief can be granted, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. 99; *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed.Cir.2002), *cert. denied*, 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed.Cir.2002); *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1338 (Fed. Cir.2001) (quoting *New Valley Corp. v. United States*, 119 F.3d 1576, 1580 (1997)), *cert. denied*, 535 U.S. 1096, 122 S.Ct. 2293, 152 L.Ed.2d 1051 (2002); *Boyle v. United States*, 200 F.3d at 1372; *Perez v. United States*, 156 F.3d at 1370 (Fed.Cir.1998); *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d at 1167 (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991)); *Hamlet v. United States*, 873 F.2d at 1416; *Ho v. United States*, 49 Fed.Cl. 96, 100 (2001), *aff'd*, 30 Fed.Appx. 964 (Fed.Cir.2002); *Alaska v. United States*, 32 Fed.Cl. at 695. If a defen-

dant or the court challenges jurisdiction or the plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *see also Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d at 747; *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404–05 (1994). When considering a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to resolve any factual disputes. *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed.Cir.1999); *Reynolds v. Army and Air Force Exch., Serv.*, 846 F.2d at 747; *see also Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed.Cir.1993) ("In establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony."), *cert. denied*, 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994); *Vanalco v. United States*, 48 Fed.Cl. 68, 73 (2000) ("If the truth of the alleged jurisdictional facts is challenged in a motion to dismiss, the court may consider relevant evidence to resolve the factual dispute.").

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act, 28 U.S.C. 1491(a)(1) (2000), requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. The Tucker Act states:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdic-

tion over claims (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114, *reh'g denied,* 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr,* 533 U.S. 289, 299, 121 S.Ct. 2271, 150 L.Ed.2d 347 n. 10 (2001); *see also United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co. of the West v. United States,* 243 F.3d 1367, 1372 (Fed.Cir.), *reh'g denied, reh'g en banc declined* (2001); *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir.1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

Sovereign immunity has been waived by the United States in tax refund cases. Congress has established jurisdiction in the United States Court of Federal Claims over tax refund claims, which have been filed first with the IRS. *See* 26 U.S.C. §§ 1346(a)(1), 6511(a) and 7422(a) (2000).

Because the plaintiffs presented the court with matters outside the pleadings (the contents of the 1997 tax return), which were not excluded, and upon which the court and the parties relied, the defendant's motion is more properly treated as a motion for summary judgment pursuant to RCFC 56. *See* RCFC 12(b) (on a motion to dismiss for failure to state a claim upon which relief can be granted, if "matters outside the pleading are pre-sented to and not excluded by the court, the motion shall be treated as one for summary judgment"); *see also Cienega Gardens v. United States,* 194 F.3d 1231, 1236 (Fed.Cir. 1998) ("Considering matters outside the pleadings, the court treated the government's motion to dismiss as a motion for summary judgment, in accordance with Rule 12(b) of the Court of Federal Claims ...."), *cert. denied sub nom. Sherman Park Apartments v. United States,* 528 U.S. 820, 120 S.Ct. 62, 145 L.Ed.2d 54 (1999); *Wertz v. United States,* 51 Fed.Cl. 443, 445 (2002); *Warr v. United States,* 46 Fed.Cl. 343, 350 (2000) (the government's motion to dismiss for failure to state a claim upon which relief can be granted was treated as a motion for summary judgment because the court was presented with, and did not exclude, matters outside of the pleadings).[2]

In general, in accordance with 26 U.S.C. § 6511 (2000), income tax refund claims must be filed within three years from the time the return was filed or two years from the time the tax was paid, whichever expires later. *See also Comm'r of Internal Revenue v. Lundy,* 516 U.S. 235, 239–40, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996); *Domtar Newsprint Sales Ltd. v. United States,* 193 Ct.Cl. 505, 509–14, 435 F.2d 563, 564–67 (1970). Section 6511(a) states:

> **(a) Period of limitation on filing claim.**—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years for the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

---

2. The court notes that in tax refund cases, the applicable tax return should have been, and general is, attached to the plaintiff's complaint. In the verbiage of the complaint filed by Mr. and Mrs. Georgeff, they reference the 1997 tax re-turn. Regardless, however, of whether the court is considering defendant's motion as one pursuant to RCFC 12(b)(6),or RCFC 56, the outcome in this case would be the same.

26 U.S.C. § 6511(a). Neither the IRS nor the court has the authority to waive a statute of limitations established by Congress. *See United States v. Garbutt Oil Co.,* 302 U.S. 528, 534, 58 S.Ct. 320, 82 L.Ed. 405 (1938); *Tucker v. Alexander,* 275 U.S. 228, 231–32, 48 S.Ct. 45, 72 L.Ed. 253 (1927).

■ In the present case, plaintiffs filed their refund claim within three years of the time their 1997 tax return was filed. Plaintiffs' return and refund claimed were filed together, in the same document, on September 25, 2002. The 1997 return, filed on September 25, 2002 by Mr. and Mrs. Georgeff, can be classified as a proper "claim for credit or refund" under the Treasury's regulations. 26 C.F.R. § 301.6402–3–4 (1998). As the plaintiffs' 1997 tax return filing also included their administrative claim for a refund, the refund claim also was timely, since it was filed within three years of the filing of the tax return. *See VanCanagan v. United States,* 231 F.3d 1349, 1351 (Fed.Cir.2000); *Wertz v. United States,* 51 Fed.Cl. at 446.

However, 26 U.S.C. § 6511(b)(2)(A) (2000) establishes additional limitations on a taxpayer's capacity to recover a credit or refund amount, as follows:

(2) **Limit on amount of credit or refund.—**

(A) **Limit where claim filed within 3–year period.**—If the claim was filed by the taxpayer during the 3–year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return.

26 U.S.C. § 6511(b)(2)(A); *see also Baral v. United States,* 528 U.S. 431, 432, 120 S.Ct. 1006, 145 L.Ed.2d 949 (2000); *VanCanagan v. United States,* 231 F.3d at 1351–52; *Domtar Newsprint Sales Ltd. v. United States,*

193 Ct.Cl. at 513, 435 F.2d at 567; *Wertz v. United States,* 51 Fed.Cl. at 446; *Raimo v. United States,* 26 Cl.Ct. 226, 229 (1992) (finding that recovery is limited to "taxes paid in the previous three years on the tax liability against which the claim is made.")

While Mr. and Mrs. Georgeff filed their refund claim within the three years enumerated in 26 U.S.C. § 6511(a), the IRC provision which states that the amount of the credit or refund cannot exceed the portion of the tax paid during the three years (thirty-six months) immediately preceding the filing of the claim forces rejection of plaintiff's refund claim. *See* 26 U.S.C. § 6511(b)(2)(A); *see also VanCanagan v. United States,* 231 F.3d at 1351–52. Plaintiffs made their final estimated tax payment for the 1997 tax year on April 15, 1998, fifty-three months before they filed their 1997 tax return and refund claim. According to the record before the court, plaintiffs made no payments to the IRS and paid no taxes during the three years immediately preceding the filing of their refund claim on September 25, 2002. Pursuant to 26 U.S.C. § 6511(b)(2)(A), the plaintiffs only could recover the amount of taxes paid between September 25, 2002, the date they filed their refund claim, and September 25, 1999, three years prior to that date. As noted above, plaintiffs have not indicated that they applied for or were granted an extension for filing their 1997 tax return. Accordingly, 26 U.S.C. § 6511(b)(2)(A) precludes plaintiffs from obtaining any credit or refund with respect to the alleged overpayment of 1997 taxes arising out of their remittances of two estimated tax payments in January and April, 1998, over one year prior to the September 25, 1999, cutoff date.

■ Plaintiffs argue, however, that the statute of limitations applicable to their refund claim should be based on 26 U.S.C. § 6511(d) (2000),[3] which enumerates a special

---

3. **(d) Special rules applicable to income taxes.—** **(1) Seven-year period of limitation with respect to bad debts and worthless securities.**—If the claim for credit or refund relates to an overpayment of tax imposed by subtitle A on account of—
(A) The deductibility by the taxpayer, under section 166 or section 832(c), of a debt as a debt which became worthless, or, under sec-

tion 165(g), of a loss from worthlessness of a security, or (B) The effect that the deductibility of a debt or loss described in subparagraph (A) has on the application to the taxpayer of a carryover, in lieu of the 3–year period of limitation prescribed in subsection (a), the period shall be 7 years from the date prescribed by law for filing the return for the year with respect to which the claim is made. If the

statute of limitations, specifically a seven-year period of limitations, with respect to bad debts and worthless securities. Defendant responds that the special "worthless securities" exception is inapplicable because plaintiffs claim for refund was included on their original, filed tax return, for the 1997 taxable year, filed on September 25, 2002, as was the description of the alleged worthless security. In fact, the worthless security was identified on Schedule D of the return filed on September 25, 2002, as having been sold on November 1, 1997, well before the due date of plaintiffs' 1997 return on April 15, 1998. The notation on Schedule D States: "5,000 Sky Team," acquired "May 30/Sept 30 1996" and sold "11/01/97," for a sales price of "$1.00," based on a purchase price of "$22,500.00," for a loss of "$22,499.00." Therefore, according to the defendant, unlike a subsequently filed refund claim based upon information discovered after the fact, plaintiff's refund claim is not "on account of" a newly determined worthless security, in accordance with 26 U.S.C. 6511(d)(1).

Some time ago, the United States Court of Claims analyzed the legislative history of the seven year statute of limitations included in 26 U.S.C. § 6511(d). In *Armstrong v. United States,* the court found that section 6511(d) was designed to protect against freshly discovered or newly increased bad debt deductions after the filing of an original tax return, not those identified before the tax return was filed. *See Armstrong v. United States,* 231 Ct.Cl. 52, 55–56, 681 F.2d 774, 776–77 (1982); *see also Indiana Nat'l Corp. v. United States,* 980 F.2d 1098, 1102 (7th Cir.1992), *cert. denied,* 508 U.S. 907, 113 S.Ct. 2335, 124 L.Ed.2d 246 (1993) (finding that section 6511(d) was designed and structured to protect taxpayers "for whom 'later evidence' discloses a miscalculation about the year in which a debt becomes worthless.") (citing H.R.Rep. No. 2333, 77th Cong., 1st

Sess., *reprinted in* 1942–2 Cum. Bull. 372, 408). In *Armstrong v. United States,* the court stated:

> Section 322(b)(5) of the Internal Revenue Code of 1939 is the substantive predecessor of Section 6511(d)(1). The House Report makes clear that the newly extended limitation period for bad debts was intended to cover those situations where information subsequent to the filing of the original return results in a redetermination of the year of deduction:
>
> > Under the existing law, the taxpayer may be whipsawed out of a deduction for a bad debt because of the uncertainty as to the time at which the debt becomes worthless. Later evidence often discloses that present decisions as to the year in which a debt becomes worthless are erroneous. For example, the taxpayer concludes that a debt has become bad and takes the deduction in that year, only to discover by later evidence that the debt actually became worthless 3 years previously. The statute of limitations having run on such previous year, this deduction is lost forever to the taxpayer. Conversely, where the debt actually became worthless in a year later than the year chosen by the taxpayer, the 3–year statute of limitations may operate against the Government.
> >
> > To relieve this inequitable situation, the bill replaces the present 3–year statute of limitations in such cases with a 7–year statute, giving a considerably greater flexibility to the allowance of bad debt deductions in the proper year.

*Armstrong v. United States,* 231 Ct.Cl. at 55–56, 681 F.2d at 776 (quoting H.R.Rep. No. 2333, 77th Cong., 1st Sess. 44–45 (1942–2 Cum. Bull. 372, 408)). The intention of Congress, when enacting and providing the seven year limitations period, was to protect tax-

---

claim for credit or refund relates to an overpayment on account of the effect that the deductibility of such a debt or loss has on the application to the taxpayer of a carryback, the period shall be either 7 years from the date prescribed by law for filing the return for the year of the net operating loss which results in such carryback or the period prescribed in paragraph (2) of this subsection, whichever

expires the later. In the case of a claim described in this paragraph the amount of the credit or refund may exceed the portion of the tax paid within the period prescribed in subsection (b)(2) or (c), whichever is applicable, to the extent of the amount of the overpayment attributable to the deductibility of items described in this paragraph.

26 U.S.C. § 6511(d)(1).

payers from potential injustice, and Congress was "not simply providing an extra 4–year grace period for dilatory taxpayers." *Armstrong v. United States,* 231 Ct.Cl. at 56, 681 F.2d at 776–77.

In the case currently before the court, on September 24, 2002, when plaintiffs filed their 1997 tax return, they identified an alleged bad debt or worthless security loss and also claimed entitlement to a refund for that loss on the same return. Plaintiffs, therefore, are not entitled to the benefit of an enlarged statute of limitations from three to seven years because the alleged loss based on the worthless security was known well in advance of the time that their 1997 tax return was due on April 15, 1998 and filed on September 25, 2002.

Plaintiffs also have contrived various other grounds to support their claim, relying on general contract and tort theory. Plaintiffs argue that payment of tax money is predicated upon a contractual relationship between the government and the taxpayer. Although proper refund claims are contemplated in the IRC, estimated tax payments do not constitute individual express or implied-in-fact contracts with the government. The relationship between the sovereign and the taxpayer is based on statutes enacted by Congress. The tax statutes and regulations issued pursuant to the IRC establish the tax liabilities of individuals and corporations to the United States and detail the basis and mechanism for claims of refund from the United States.

The plaintiffs in seeking a refund, also take issue with the actions and conduct of IRS officials for failing to credit their tax overpayment to preexisting tax liabilities or returning the overpayment to them as a refund, and allege tortious actions of government officials as a basis for these claims. Although the United States Court of Federal Claims has refund jurisdiction in tax cases, this court does not have jurisdiction over claims sounding in tort. *See New Am. Shipbuilders, Inc. v. United States,* 871 F.2d 1077, 1079 (Fed.Cir.1989) ("If the government misconduct alleged was tortious, jurisdiction is not granted the Claims Court under the Tucker Act . . . ."); *Tree Farm Dev. Corp. v. United States,* 218 Ct.Cl. 308, 316,

585 F.2d 493, 498 (1978) (noting that the Court of Claims "specifically lacks jurisdiction in cases sounding in tort" under the Tucker Act); *Whyte v. United States,* 59 Fed.Cl. 493, 497 (2004) (stating that the Tucker Act does not grant the court jurisdiction over independent tort claims); *Cottrell v. United States,* 42 Fed.Cl. 144, 148 (1998) ("The Tucker Act limits the court's jurisdiction to non-tort money suits against the United States . . . ."); *see also Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.), *reh'g denied* (1997) ("The Court of Federal Claims . . . lacks jurisdiction over tort actions against the United States."); *LeBlanc v. United States,* 50 F.3d 1025, 1030 (Fed. Cir.1995) (noting that the claims at issue were "tort claims, over which the Court of Federal Claims has no jurisdiction"); *Shearin v. United States,* 992 F.2d 1195, 1197 (Fed.Cir.1993) ("It is well settled that the United States Court of Federal Claims lacks-and its predecessor the United States Claims Court lacked-jurisdiction to entertain tort claims."). The United States Supreme Court recognized as early as 1868 that Congress did not intend to confer on the United States Court of Claims jurisdiction over tort actions against the government: "The language of the statutes which confer jurisdiction upon the Court of Claims, excludes by the strongest implication demands against the government founded on torts." *Gibbons v. United States,* 75 U.S. (8 Wall.) 269, 275, 19 L.Ed. 453 (1868). Finally, "[j]urisdiction to hear tort claims is exclusively granted to the United States District Courts under the Federal Tort Claims Act." *McCauley v. United States,* 38 Fed.Cl. 250, 264 (1997), *aff'd,* 152 F.3d 948 (Fed.Cir.) (table), *cert. denied,* 525 U.S. 1032, 119 S.Ct. 574, 142 L.Ed.2d 478 (1998), *reh'g denied,* 525 U.S. 1173, 119 S.Ct. 1102, 143 L.Ed.2d 101 (1999); *see also* 28 U.S.C. § 1346(b) (2000); *Wood v. United States,* 961 F.2d 195, 197 (Fed.Cir.) ("[D]istrict courts have . . . exclusive jurisdiction over tort claims for any amount if they fall within the Federal Tort Claims Act, [28 U.S.C.] § 1346(b.)"), *reh'g denied* (1992); *Martinez v. United States,* 26 Cl.Ct. 1471, 1476 (1992) ("The district courts have exclusive jurisdiction in [Federal Tort Claims Act] actions."), *aff'd,* 11 F.3d 1069 (Fed.Cir.1993)

(table). Any claim plaintiffs would assert for relief from alleged tortious actions on the part of government officials, therefore, cannot be entertained in this court due to lack of jurisdiction.

Plaintiffs also contend that the entire Internal Revenue Code and regulations and rules issued pursuant thereto, are "void for vagueness" and "unconstitutional." Plaintiffs allege that the refusal by the IRS to refund the estimated tax payments constitutes "an unconstitutional taking of property without due process and contrary to established law and precedent." Article I, Section 8 of the United States Constitution establishes the government's right to impose taxes: "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States." U.S. Const. art. I, § 8. Furthermore, the Sixteenth Amendment to the United States Constitution, passed in 1913, states that: "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." U.S. Const. amend. XVI. This amendment authorized a tax on income by reversing an 1895 decision of the United States Supreme Court, *Pollock v. The Farmers' Loan and Trust Co.*, 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108 (1895), which declared a federal income tax law unconstitutional.

The United States Supreme Court has determined that the application of the taxing power is constitutional unless it has no rational basis or is so arbitrary or grossly inequitable in its basis for classifying taxpayers that it must be regarded as confiscatory, pursuant to the Fifth Amendment meaning of a taking. *See Brushaber v. Union Pacific R.R. Co.*, 240 U.S. 1, 24–5, 36 S.Ct. 236, 60 L.Ed. 493 (1915); *Bruinooge v. United States*, 213 Ct.Cl. 26, 29, 550 F.2d 624, 626 (1977) ("It is unclear whether such a test, if it is in fact more lenient than the traditional test, still exists. At least, we are unaware that it has ever been invoked, for the Su-

preme Court has sustained discriminations in federal tax statutes that have been constitutionally challenged upon finding that a sufficient rational basis existed."); *see also Postal Tel. Co. v. City of Portland*, 228 F. 254, 256 (D.Or.1915). Plaintiffs' general challenges to the tax code and all rules and regulations issued pursuant thereto border on the frivolous and must fail.

■ Similarly, under the Tucker Act, 28 U.S.C. § 1491 (2000), this court has no jurisdiction to adjudicate claims grounded in Fifth Amendment due process. The Fifth Amendment, due process clause standing alone, without an underlying statutory or regulatory right to recover money damages, does not provide the necessary independent basis for jurisdiction in this court. *See Hamlet v. United States*, 63 F.3d 1097, 1107 (Fed.Cir. 1995), *cert. denied*, 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996); *see also Crocker v. United States*, 125 F.3d 1475, 1476 (Fed.Cir.1997); *Collins v. United States*, 67 F.3d 284, 288 (Fed.Cir.), *reh'g denied* (1995) (citing additional cases); *LeBlanc v. United States*, 50 F.3d at 1028; *Mullenberg v. United States*, 857 F.2d 770, 773 (Fed.Cir.1988); *Murray v. United States*, 817 F.2d 1580, 1583 (Fed.Cir.1987); *United States v. Connolly*, 716 F.2d 882, 886–87 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984); *Frank's Livestock & Poultry Farm, Inc. v. United States*, 17 Cl. Ct. 601, 606–07 (1989) (explaining that a person may sue "federal officials acting under color of authority who have violated that individual's constitutional rights," but that "constitutional violations, other than a taking claim under the Fifth Amendment, do not state a cause of action for monetary relief against the United States in the Claims Court.") (citations omitted), *aff'd*, 905 F.2d 1515 (Fed.Cir.1990). In *Demes*, the court held that it had no jurisdiction over a taxpayer's claim that the government's failure to return a taxpayer's income tax refund constitutes a denial of due process in violation of the Fifth Amendment. *See Demes v. United States*, 52 Fed.Cl. 365, 368, 374 (2002).

■ In addition, a tax obligation by itself does not constitute the taking of private property for public use. *See U.S. Const.*

amend. V; *see also Cole v. City of LaGrange,* 113 U.S. 1, 8, 5 S.Ct. 416, 28 L.Ed. 896 (1885) ("The taking of property by taxation requires no other compensation than the tax-payer receives in being protected by the government to the support of which he contributes."); *United States Shoe Corp. v. United States,* 296 F.3d 1378, 1383–85 (Fed.Cir. 2002), *cert. denied,* 538 U.S. 1056, 123 S.Ct. 2214, 155 L.Ed.2d 1105 (2003); *Branch ex rel. Maine Nat'l Bank v. United States,* 69 F.3d 1571, 1576–77 (Fed.Cir.1995) ("Thus, even though taxes or special municipal assessments indisputably 'take' money from individuals or businesses, assessments of that kind are not treated as *per se* takings under the Fifth Amendment."), *reh'g denied and suggestion for reh'g en banc declined* (1996), *cert. denied,* 519 U.S. 810, 117 S.Ct. 55, 136 L.Ed.2d 18 (1996); *Saladino v. United States,* 62 Fed.Cl. 782, 794 (2004); *Demes v. United States,* 52 Fed.Cl. at 369.

Finally, plaintiffs contend in their complaint that the IRS has failed to use the overpayment they made for the 1997 tax year for taxes which they have due and owing for years prior to 1997. According to 26 U.S.C. § 6402(a):

> (a) **General rule.**—In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d) and (e), refund any balance to such person.

26 U.S.C. § 6402(a) (2000).

■ From the plain language of the statute, the IRS has no obligation to credit any individual's tax overpayment to specific preexisting outstanding tax liabilities upon the taxpayer's request. The statute, 26 U.S.C. § 6402, gives the IRS the discretionary authority to credit tax overpayments to any tax liability. *See Northern States Power Co. v. United States,* 73 F.3d 764, 766–67 (8th Cir.), *cert. denied,* 519 U.S. 862, 117 S.Ct. 168, 136 L.Ed.2d 110 (1996); *In re Ryan,* 64 F.3d 1516, 1523–24 (11th Cir.1995) (holding that 26 U.S.C. § 6402 gives the IRS the

discretionary authority to credit tax overpayments to any tax liability); *Pettibone Corp. v. United States,* 34 F.3d 536, 538 (7th Cir. 1994); *Acker v. United States,* 519 F.Supp. 178, 182 (N.D.Ohio 1981) (finding that the government may apply tax overpayments to subsequent years' liabilities, but is not required to do so). The statute and case law are clear that the discretionary authority of the IRS supersedes any desires or wishes on the part of a taxpayer to have their overpayment credited to specific, preexisting, tax liabilities. The plaintiffs, therefore, have not demonstrated an abuse of discretion on the part of IRS officials. Furthermore, the court notes that the 26 U.S.C. § 6511(b)(2)(A) three year limit applies to both credits and refunds, precluding plaintiffs' claim.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, treated as a motion for summary judgment because matters outside the pleading were presented and not excluded by the court, are hereby **GRANTED.** Plaintiffs' complaint is **DISMISSED.** The clerk's office shall enter **JUDGMENT** for the defendant consistent with this opinion.

**IT IS SO ORDERED.**