NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-12-1608-KuBaPa |
| BENJAMIN MENJIVAR, | Bk. No.   LA 11-61208-NB |
| Debtor. | Adv. No.  LA 12-01125-NB |
| BENJAMIN MENJIVAR; SARA MENJIVAR, | |
| Appellants, | |
| v. | **MEMORANDUM**[*] |
| WELLS FARGO BANK, N.A., | |
| Appellee. | |

Argued on November 21, 2013
at Pasadena, California

Submitted on January 28, 2014

Filed – January 28, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Neil W. Bason, Bankruptcy Judge, Presiding

Appearances:     Philip Eberhard Koebel, Esq. argued for appellants
Benjamin and Sara Menjivar; Robert Collings
Little, Esq. of Anglin, Flewelling, Rasmussen,
Campbell & Tryttenn LLP argued for appellee Wells
Fargo Bank, N.A.

[*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

Before: KURTZ, BALLINGER[**] and PAPPAS, Bankruptcy Judges.

## INTRODUCTION[1]

Debtors Benjamin and Sarah Menjivar commenced an adversary proceeding against Wells Fargo Bank ("WFB") seeking damages and seeking to invalidate WFB's trust deed against their residence. The bankruptcy court dismissed all of the Menjivars' claims for relief without leave to amend, and the Menjivars appealed.

None of the Menjivars' allegations stated a claim for relief plausible on its face. Nor were there any amendments consistent with the Menjivars' existing allegations that would have cured the fatal deficiencies in their first amended complaint ("FAC"). The bankruptcy court properly dismissed their FAC without leave to amend, so we AFFIRM.

## FACTS[2]

In October 2005, the Menjivars obtained a loan from WFB's predecessor World Savings Bank in order to refinance the first

---

[**]Hon. Eddward P. Ballinger, Jr., United States Bankruptcy Judge for the District of Arizona, sitting by designation.

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2]Most of the facts stated herein are drawn from the Menjivars' FAC. To the extent the Menjivars' factual allegations are well pleaded, we accept them as true. We also draw some of the facts from documents referenced in the FAC or which were submitted by WFB in support of its motion to dismiss and which are properly subject to judicial notice. See United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003) (discussing circumstances under which facts are deemed true for purposes of considering a Civil Rule 12(b)(6) dismissal motion).

2

and second trust deeds on their residence. In January 2007, World Savings Bank persuaded the Menjivars to once again refinance their residence. The Menjivars admit that $516,147.97 of the loan proceeds from their January 2007 refinancing were used to pay off their 2005 home loan, that they also received $13,462.50 in cash from the January 2007 refinancing, that they signed a promissory note agreeing to repay $538,750.00, and that the January 2007 note was secured by a deed of trust on their residence.

In July 2007, World Savings Bank persuaded the Menjivars to refinance their residence a third time. According to the Menjivars, World Savings Bank persuaded the couple to refinance by representing that the Menjivars would receive a home loan with a fixed interest rate. But the loan documents the Menjivars signed plainly stated otherwise. The loan documentation also stated that the Menjivars' combined monthly income was $10,600, which the Menjivars now admit was inaccurately high. They only noticed this inaccuracy when they reviewed the loan documentation later on, presumably after their dispute with WFB arose.

The Menjivars claim that, at closing, they were surprised by the total amount of settlement charges and fees they had to pay, particularly the roughly $4,000 they had to pay in cash in order for the July 2007 refinancing to close. They further claim that World Savings Bank pressured them to close quickly.

According to the FAC, the Menjivars blame the stress of the July 2007 refinancing for a severe stroke Ms. Menjivar suffered in August 2007 and for the death of their mentally-ill son in 2008. But the Menjivars have not alleged any legally-cognizable

3

connection between the July 2007 refinancing and these tragedies.

At some point, WFB became the successor by merger to World Savings Bank's rights under the July 2007 note and deed of trust.[3] The Menjivars requested that WFB refinance them into a fixed rate loan. But by this time, the national mortgage crisis already was underway, and WFB told the Menjivars that WFB would only consider refinancing them if they were in default on the July 2007 note. Based on the information from WFB, the Menjivars defaulted on the 2007 note by not making their mortgage payments. WFB recorded a notice of default in August 2010 and a notice of trustee's sale in November 2010.

In November 2010, with the trustee's sale looming, the Menjivars sued WFB in the Los Angeles County Superior Court (LASC Case No. GC046375) ("First State Court Lawsuit") and obtained a temporary restraining order temporarily enjoining the sale pending further proceedings. But WFB countered by removing the First State Court Lawsuit to the United States District Court for the Central District of California. (USDC Case No. 10-CV-09628). Ultimately, the temporary injunction terminated, and the Menjivars voluntarily dismissed the First State Court Lawsuit.[4]

---

[3]According to the documents attached to WFB's request for judicial notice filed in support of its dismissal motion, World Savings Bank changed its name in 2008 to Wachovia Mortgage, FSB, and in 2009 changed it name again to Wells Fargo Bank Southwest, N.A., and merged into WFB. The Menjivars never objected to WFB's judicial notice request and have never disputed WFB's explanation of how it became the creditor holding the July 2007 note and trust deed. The explanation also is generally consistent with the FAC's allegations regarding World Savings Bank and WFB.

[4]We have reviewed the district court's case docket, and we
(continued...)

4

In January 2011, the Menjivars filed a new state court lawsuit (LASC Case No. GC046687) ("Second State Court Lawsuit"), and immediately sought a new temporary restraining order to prevent WFB's imminent trustee's sale.[5] When it became apparent that the Menjivars would not be able to obtain a temporary restraining order before the date of the trustee's sale, Ms. Menjivar filed a chapter 13 bankruptcy case (USBC Case No. LA 11-012361-EC). That case was dismissed in March 2011 because the debtor did not file one of the papers required to support her bankruptcy filing.

In February 2011, shortly before WFB's rescheduled foreclosure sale, Mr. Menjivar filed a chapter 13 bankruptcy case (USBC Case No. LA 11-017774-WB). In December 2011, at the confirmation hearing held in Mr. Menjivar's bankruptcy case, the bankruptcy court dismissed the bankruptcy case. According to the Menjivars, they did not oppose the case dismissal because they

[4](...continued)
can take judicial notice of that docket and the imaged documents attached thereto. See Estate of Blue v. County of Los Angeles, 120 F.3d 982, 984 (9th Cir. 1997); Mullis v. Bankr. Ct., 828 F.2d 1385, 1388 & n.9 (9th Cir. 1987). Their original state court complaint on file therein reflects that the First State Court Lawsuit arose from the same refinancing transactions and loan modification attempts referenced in their subsequent state court lawsuit and in the FAC. That original complaint stated seventeen causes of action, including but not limited to violation of the Truth In Lending Act, violation of the Real Estate Settlement Procedures Act, fraud, predatory lending and unlawful foreclosure.

[5]The complaint in the Second State Court Lawsuit was similar but not identical to the Menjivars' complaint in the First State Court Lawsuit. It was based on essentially the same predicate facts, but the stated causes of action were slightly different.

5

believed that WFB would not offer them a loan modification unless the bankruptcy case was dismissed.

Also in December 2011, WFB offered to refinance the Menjivars. This refinance offer consisted of a three-month trial loan modification program, which provided in relevant part for three months of mortgage payments at roughly $2,000 per month, with a modified interest rate of 2%.

In May 2012, WFB sent the Menjivars documentation for a permanent loan modification. The Menjivars wanted to accept the permanent loan modification offer, but they also wanted to continue to litigate over the validity of the July 2007 note and trust deed, so they attempted to amend the permanent loan modification documents by striking out the paragraph reaffirming the July 2007 note and trust deed but otherwise accepting the permanent loan modification documents as drafted. WFB rejected the permanent loan modification documents as amended by the Menjivars.

Mr. Menjivar filed in December 2011 a new chapter 13 bankruptcy case, the case in which the underlying adversary proceeding was commenced. According to the Menjivars, this latest case was necessitated by the wrongful repossession of their automobile by a creditor not associated with the underlying adversary proceeding. Up until January 2012, their Second State Court Lawsuit remained dormant while the Menjivars' serial bankruptcy cases proceeded. But the Menjivars then removed the Second State Court Lawsuit to the bankruptcy court, on January 30, 2012, thereby commencing the adversary proceeding.

On July 31, 2012, the Menjivars filed the FAC. The FAC

6

relied on essentially the same facts as their two state court complaints, but many of the claims for relief set forth in the FAC were new. The FAC claims for relief generally fall into one of several categories: (1) they allege that the 2007 notes and trust deeds were constructive fraudulent transfers under California law; (2) they allege that the 2007 notes and trust deeds were actual fraudulent transfers under California law; (3) they allege that World Savings Bank fraudulently induced them to enter into the July 2007 refinancing by misrepresenting that the refinancing would be for a fixed rate loan when in reality it was for an adjustable rate loan; (4) they allege that World Savings Bank did not give them any consideration whatsoever in exchange for the 2007 notes and trust deeds; (5) they allege that World Savings Bank violated the Truth in Lending Act ("TILA"); and (6) they allege that World Savings Bank violated the Fair Housing Act ("FHA") and the Equal Credit Opportunity Act ("ECOA"). Based on all of these claims, the Menjivars sought to invalidate the 2007 notes and trust deeds, and sought actual damages, statutory damages, punitive damages, injunctive relief, to quiet title, and costs and attorney's fees.

WFB filed a Civil Rule 12(b)(6) motion to dismiss, and the Menjivars opposed the motion. The bankruptcy court heard the dismissal motion on October 25, 2012, and entered an order granting the motion with prejudice on November 7, 2012.[6] The

_____

[6]The bankruptcy court's initial dismissal order stated that the dismissal was without prejudice but, upon limited remand from this Panel, the bankruptcy court corrected the dismissal order to clarify that the dismissal was with prejudice and without leave
(continued...)

7

hearing transcript and the tentative ruling incorporated into the court's dismissal order reflect that the court essentially adopted the grounds for dismissal presented by WFB. In particular, the bankruptcy court held that some of the claims for relief were barred by the applicable statutes of limitation and others could not be reconciled with the contents of the loan documentation underlying the claims. The bankruptcy court further opined that the Menjivar's claims based on state law appeared to be preempted by the Home Owners' Loan Act of 1933 ("HOLA"). The Menjivars timely filed their notice of appeal on November 21, 2012.[7]

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C.

---

[6](...continued)
to amend.

[7]Shortly before oral argument in this appeal, Mr. Menjivar's current bankruptcy case was converted from chapter 13 to chapter 7. The Menjivars' claims for relief at least in part were property of Mr. Menjivar's bankruptcy estate and, hence, the chapter 7 trustee had a direct interest in the outcome of this appeal. See McGuire v. United States, 550 F.3d 903, 914 (9th Cir. 2008); Estate of Spirtos v. One San Bernardino County Superior Court Case, 443 F.3d 1172, 1175-76 (9th Cir. 2006). Accordingly, we issued an order deferring submission of this appeal and directing the chapter 7 trustee to advise us whether he desired to appear in this appeal. The trustee then filed a response indicating that he had no intention of participating in this appeal. He subsequently filed a supplemental response indicating that he has abandoned the estate's interest in the Menjivars' real property and in the associated claims for relief. As a result, this appeal has been taken under submission and is now ready for decision.

§§ 1334 and 157(b)(2)(K).[8]  We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court commit reversible error when it dismissed the Menjivars' FAC with prejudice and without leave to amend?

## STANDARDS OF REVIEW

We review de novo a dismissal under Civil Rule 12(b)(6). See Movsesian v. Victoria Versicherung AG, 670 F.3d 1067, 1071 (9th Cir. 2012) (en banc).  When we review a matter de novo, we consider it anew, "as if no decision previously had been rendered, giving no deference to the bankruptcy court's prior determinations."  Nordeen v. Bank of America, N.A. (In re Nordeen), 495 B.R. 468, 475 (9th Cir. BAP 2013).

Generally speaking, we review the bankruptcy court's decision to dismiss without leave to amend for an abuse of discretion.  See, e.g., Zadrozny v. Bank of N.Y. Mellon, 720 F.3d 1163, 1167 (9th Cir. 2013); Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).  It also has been said that appellate courts should "review strictly a . . . court's

---

[8]The Menjivars effectively consented to the bankruptcy court entering a final disposition by pursuing their litigation against WFB in the bankruptcy court, with full knowledge of the decision in Stern v. Marshall, 131 S.Ct. 2594 (2011), as that decision is cited in the second paragraph of the Menjivars' FAC.  WFB similarly consented to the bankruptcy court entering a final disposition.  See Res. Funding, Inc. v. Pac. Cont'l Bank (In re Wash. Coast I, L.L.C.), 485 B.R. 393, 407-11, (9th Cir. BAP 2012).  Alternately, the parties have forfeited any argument challenging the bankruptcy court's entry of a final disposition by not raising the issue either in the bankruptcy court or on appeal.  See id.

9

exercise of discretion denying leave to amend." Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir. 1988).

On the other hand, the strictness of this review apparently diminishes when the plaintiff has amended its complaint, as the Ninth Circuit has held a number of times that "'[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'" See Zadrozny, 720 F.3d at 1173 (quoting United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011)) (emphasis added). Accord, Mir v. Fosburg, 646 F.2d 342, 347 (9th Cir. 1980).

In any event, the Ninth Circuit also has held that "'[d]ismissal without leave to amend is improper, unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.'" Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007). This is the key standard of review for purposes of our analysis and disposition of the instant appeal.

We may affirm on any ground supported by the record. Diener v. McBeth (In re Diener), 483 B.R. 196, 202 (9th Cir. BAP 2012).

**DISCUSSION**

**A.  Overview of Applicable Legal Standards**

A defendant may obtain dismissal of a complaint under Civil Rule 12(b)(6) if the complaint lacks a cognizable legal theory or lacks sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988), partially abrogated on other grounds by, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562-63 (2007). The complaint can

10

survive the dismissal motion "only if, taking all well-pleaded factual allegations as true, it contains enough facts to 'state a claim to relief that is plausible on its face.'" Hebbe v. Pliler, 627 F.3d 338, 341-42 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and Twombly, 550 U.S. at 570).

This plausibility standard requires more than the mere possibility that the defendant is liable to the plaintiff. Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted). Formulaic recitations of the elements of a claim for relief are insufficient by themselves to meet the plausibility standard. Iqbal, 556 U.S. at 678.

In reviewing the dismissal, while we must accept as true all well-pleaded facts, we do not need to accept as true conclusory statements, statements of law, and unwarranted inferences cast as factual allegations. Twombly, 550 U.S. at 555-57; Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). We also may reject factual allegations contradicted by judicially noticed material. See Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000). Indeed, we can use judicially noticed facts and documents to establish that the complaint fails to state a viable claim for relief. Often, we similarly can use documents attached to or referenced in the complaint. See Ritchie, 342 F.3d at 907-08; Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

11

In short, the allegations of the complaint, along with other materials properly before the court, may demonstrate that the plaintiff is not entitled to relief as a matter of law. See Weisbuch v. County of L.A., 119 F.3d 778, 783 n.1 (9th Cir. 1997) ("If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts.").

The Menjivars dispute whether the bankruptcy court properly dismissed their FAC with prejudice and without leave to amend. They assert that the bankruptcy court should have explicitly set forth its reasoning explaining why it was not granting leave to amend and that the absence of such explicit reasoning mandates reversal. We disagree. The Ninth Circuit expressly rejected this argument in Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989), partially abrogated on other grounds by, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993). In Ascon Props., even though the trial court there did not state any explicit reasoning in support of its decision to dismiss without leave to amend, the Ninth Circuit held that it still could affirm because adequate and proper grounds for the trial court's decision were apparent from the entire record. Id. at 1160-61.

When it is apparent from our de novo review that amendment would have been futile, we may affirm the bankruptcy court's dismissal without leave to amend. See Intri-Plex Techs., Inc., 499 F.3d at 1056. Amendment is futile when it is clear that amendment would not have remedied the complaint's fatal deficiencies. Id.

12

While the Menjivars stated in their opposition to the dismissal motion that they desired to amend their FAC in the event the bankruptcy court determined that their FAC was deficient, the Menjivars never filed a formal motion to amend their FAC, never submitted to the court a proposed second amended complaint,[9] and never even indicated in any of their papers how they would amend the FAC to overcome any deficiencies. The Menjivars assert on appeal that there is no rule requiring them to offer a proposed amended complaint in advance of dismissal and that their failure to indicate how they would amend the complaint is not grounds, by itself, for dismissal without leave to amend. This much is true. But the Menjivars overlook the real significance of the absence of proposed amendments. Whereas the Menjivars were entitled to propose amendments inconsistent with their existing allegations, see PAE Gov't Servs., Inc. v. MPRI, Inc., 514 F.3d 856, 859-60 (9th Cir. 2007), in deciding whether amendment was futile, the bankruptcy court and this Panel only are required to take into account hypothetical amended pleadings containing facts consistent with those already alleged. See Swartz v. KPMG LLP, 476 F.3d 756, 761 (9th Cir. 2007) (citing Albrecht, 845 F .2d at 195, and holding that dismissal without leave to amend is proper when "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency") (emphasis added); Schreiber Distrib. Co. v.

---

[9]If the Menjivars had filed a motion to amend, the bankruptcy court's local rules would have required the Menjivars to submit the proposed amended pleading in conjunction with that motion. See Bankr. C.D. Cal. R. 7016-1(a)(1).

13

*Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (same); see also *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (in ruling on Civil Rule 12(b)(6) motion, court may rely on concessions made by plaintiff); *Weisbuch*, 119 F.3d at 781 (same).

**B.   California Fraudulent Transfer Claims**

With this legal framework in mind, we turn our attention to the Menjivars' claims for relief.  Most of the Menjivars' claims explicitly rely on California's version of the Uniform Fraudulent Transfer Act ("UFTA"), Cal. Civ. Code. §§ 3439, et seq., or implicitly rely on the UFTA by referencing the Menjivars' fraudulent transfer allegations.

The principal ground for dismissal of the Menjivars' UFTA claims was HOLA preemption.  See *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, (9th Cir. 2008).  *Silvas* held that, pursuant to 12 C.F.R. § 560.2, claims for relief based on Cal. Bus. and Prof. Code §§ 17200 and 17500 were preempted as applied by the plaintiffs therein "because [their] state law claims provide state remedies for violations of federal law in a field preempted entirely by federal law."  In conducting its HOLA preemption analysis, *Silvas* focused on the specific factual allegations contained in the complaint and whether these allegations referenced activities and conduct subject to the exclusive regulation of the Office of Thrift Supervision ("OTS"), as specified in 12 C.F.R. § 560.2(b).  Because all of the specific misconduct alleged fell within the ambit of 12 C.F.R. § 560.2(b), *Silvas* concluded that the California statutes at issue were preempted as applied there by the plaintiffs.

14

Here, the specific factual allegations underlying the Menjivars' UFTA claims are that World Savings Bank[10] misrepresented the terms of the 2007 loans, overcharged for settlement fees, and ultimately extended credit to the Menjivars under terms that the Menjivars considered unfavorable and incapable of helping them meet their personal financial goals. These allegations deal with conduct and activities exclusively regulated by the OTS.  See 12 CFR § 560.2(b)(4), (5) and (9).[11]

---

[10]WFB's judicial notice request contains documents identifying World Savings Bank as a federal savings bank that was subject to OTS oversight at the time of the 2007 refinancing transactions.

[11]The above-referenced subparagraphs of 12 CFR § 560.2(b) provide for field preemption of:

(b) . . . state laws purporting to impose requirements regarding:

*    *    *

(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

*    *    *

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit

(continued...)

15

Accordingly, based on Silvas and 12 CFR § 560.2(b), the bankruptcy court here correctly concluded that the Menjivars' UFTA claims should be dismissed based on HOLA preemption. Nor were there any amendments consistent with the Menjivars' existing allegations that would have saved their UFTA claims from preemption. Thus, dismissal without leave to amend was appropriate.

As a separate and independent ground for affirmance, we note that the Menjivars' actual fraudulent transfer allegations are fatally inconsistent with the UFTA, which requires the plaintiff to plead and prove that the transferor actually intended to hinder, delay or defraud his creditors. That the focus is on the transferor's intent is plain on the face of the statute. See Cal. Civ. Code § 3934.04(a)(1). This has been the rule in California for a long time, well before California enacted the UFTA:[12] "It is well settled that it is the motive of the grantor, and not the knowledge of the grantee, that determines the validity of the transfer." Bush & Mallett Co. v. Helbing, 134 Cal. 676, 679 (1901). Here, the Menjivars have not alleged that they as the transferors of the 2007 notes and trust deeds entered into the 2007 refinancing transactions with the intent to hinder, delay or defraud their creditors. Instead, they in essence alleged that World Savings Bank duped them into entering

[11](...continued)
contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants[.]

[12]California enacted the UFTA in 1986. See Mejia v. Reed, 31 Cal.4th 657, 664 (Cal. 2003).

16

into refinancing transactions that were not in their financial best interests. No amendments consistent with these existing allegations were going to meet the requirement to allege intentional misconduct by the Menjivars, which would be necessary to state a viable claim to invalidate the 2007 notes and trust deeds as actual fraudulent transfers.

Similarly, the Menjivars' constructive fraudulent transfer allegations are fatally inconsistent with the UFTA, which requires an absence of reasonably equivalent value. See Cal. Civ. Code §§ 3439.04(a)(1)(2), 3439.05. Reasonably equivalent value under the UFTA is measured objectively, from the perspective of the transferor's creditors. See Decker v. Tramiel (In re JTS Corp.), 617 F.3d 1102, 1109 (9th Cir. 2010); Maddox v. Robertson (In re Prejean), 994 F.2d 706, 708 (9th Cir. 1993). This focus on the creditors' perspective is consistent with the underlying purpose of the UFTA, which seeks to protect the creditors from "transfers that impede them in the collection of their claims." Mejia 31 Cal.4th at 664. Here, the Menjivars' specific factual allegations admit that, in July 2007, the Menjivars executed a note for roughly $550,000 in order to payoff the $539,000 note they executed in January 2007. In turn, the Menjivars executed the January 2007 note in exchange for $13,000 in cash and the payoff of their October 2005 note in the amount of $516,000. All three notes were secured by the Menjivars' residence.

The FAC's allegations make clear that, from the Menjivars' subjective viewpoint, the 2007 refinancing transactions did not meet their personal, subjective financial needs and goals. But

17

for purposes of the UFTA, when we consider the transactions as we must from the creditors' objective viewpoint, it simply is not plausible that the satisfaction of antecedent debt accomplished by the 2007 refinancing transactions did not constitute reasonably equivalent value. As a matter of law, a note and trust deed given on account of antecedent debt does not qualify as a constructive fraudulent transfer. See In re Prejean, 994 F.2d at 709. Nor would any amendment of the FAC consistent with its existing allegations cure this deficiency.

In sum, the bankuptcy court did not err by dismissing the Menjivars' UFTA claims without leave to amend.

**C. Claims Based on Fraud and Lack of Consideration**

In a single claim for relief, the Menjivars state both fraud and lack of consideration as grounds to invalidate the 2007 notes and trust deeds.

The Menjivars lack of consideration contention is based on a false premise: that the agreed-upon satisfaction of their antecedent debts was invalid or insufficient consideration to bind them to the terms of 2007 notes and trust deeds. To the contrary, the satisfaction of their antecedent debt conferred a substantial and valid legal benefit on the Menjivars, a benefit that they were not otherwise entitled to but for the 2007 refinancing transactions. Thus, the 2007 notes and trust deeds were supported by sufficient and valid consideration. See Cal. Civ. Code § 1605; Raedeke v. Gibraltar Sav. & Loan Assn., 10 Cal.3d 665, 673-74 (1974).

As for their fraud contentions, they are barred by California's three-year statute of limitations on fraud claims.

18

See Cal. Civ. Proc. Code § 338(d). The limitations period began to run when the Menjivars entered into the 2007 refinancing transactions, and they did not commence the current litigation until more than three years had elapsed thereafter.

The Menjivars made only one argument in their opening appeal brief regarding the fraud statute of limitations. They claim that their fraud contentions are governed by California's four-year limitations period covering claims based on contract, see Cal. Civ. Code § 337(1), and not based on California's three-year limitations period covering claims based on fraud. See Cal. Civ. Code § 338(d). This claim is specious. The Menjivars' allegations that they were fraudulently induced to execute the 2007 notes and trust deeds sound in fraud and not in contract. Under similar circumstances, the Ninth Circuit did not hesitate to apply a three-year limitations period applicable to fraud claims. See Zadrozny, 720 F.3d at 1173; see also Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F.Supp.2d 952, 971 (N.D. Cal. 2010) (same).

For the first time in their reply brief, the Menjivars argue that the fraud statute of limitations did not begin to run until they were presented with sufficient facts from which a reasonable person would have been suspicious that some sort of wrong had been committed. See Norgart v. Upjohn Co., 21 Cal.4th 383, 397-98 (1999). The Menjivars forfeited this argument by not raising it either in the bankruptcy court or in their opening appeal brief. See Zadrozny, 720 F.3d at 1173.

Even if we were to consider this argument, the July 2007 loan terms the Menjivars now complain of are clear on the face of

19

the July 2007 loan documents the Menjivars signed.  Accordingly, California's discovery rule would not have delayed the commencement of the limitations period, as the Menjivars had sufficient information from the outset regarding the true terms of the July 2007 refinancing transaction.  See id. (alleged problems with loan transaction evident on the face of loan documents, so fraud limitations period not tolled);  Rosenfeld, 732 F.Supp.2d at 970-71 (same).

The defects associated with the Menjivars' fraud and lack of consideration allegations are not the type the Menjivars could have cured with amendments consistent with their existing allegations.  Thus, the bankruptcy court properly dismissed these claims without leave to amend.

**D.  Claims Based on TILA, FHA and ECOA.**

The Menjivars had up to three years to demand rescission of the 2007 refinancing transactions based on alleged TILA violations.  15 U.S.C. § 1635(f).  Meanwhile, most TILA damages claims need to be filed within one year, but a handful of TILA violations will support a damages claim for up to three years.  See 15 U.S.C. § 1640(e).  As for the alleged violations of the FHA and the ECOA, the Menjivars only had two years from the occurrence of the alleged violations to bring suit.  See 42 U.S.C. § 3613(a)(1)(A); 15 U.S.C. § 1691e(f).[13]  Because the

_____

[13]In 2010, Congress enlarged the ECOA limitations period from two years to five years.  See Cottrell v. Vilsack, 915 F.Supp.2d 81, 90 & n.7 (D. D.C. 2013).  But the ECOA limitations period in effect at the time of the 2007 refinancing transactions was two years, and the time for the Menjivars to

(continued...)

20

Menjivars did not commence their litigation against WFB, and did not demand rescission of the 2007 refinancing transactions, until after all of these limitations periods had expired, their TILA, FHA and ECOA claims are time-barred.

The Menjivars argue for the first time in their appeal reply brief that one or more of these limitations periods did not run because they did not discover sufficient facts regarding World Savings Bank's TILA, FHA and ECOA violations until sometime in 2010, well after the 2007 refinancing transactions were consummated.

We reject this argument as to the Menjivars' TILA claims for the same reasons we rejected the Menjivars' similar argument regarding their discovery of the facts underlying their fraud claim. First, the Menjivars forfeited these arguments by not asserting them in the bankruptcy court or in their opening appeal brief. And second, the facts alleged in the FAC and the contents of the July 2007 loan documents demonstrate that the Menjivars had sufficient information from the outset regarding the true terms of the July 2007 refinancing transaction so as to fatally undermine their discovery argument. Cf. Meyer v. Ameriquest Mortg. Co., 342 F.3d 899, 902 (9th Cir. 2003) (borrowers had all the information they needed to discover their TILA claim at the

_____

[13](...continued)
file their ECOA claim expired in 2009, before the ECOA limitations period was amended. The new larger limitations period cannot be applied to the Menjivars' ECOA claim because that claim already was time barred before the 2010 amendment of the ECOA was enacted. See Chenault v. U.S. Postal Serv., 37 F.3d 535, 539 (9th Cir. 1994), cited with approval in, Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 950 (1997).

time the loan was consummated, so TILA limitations period was not tolled); <u>Rosenfeld</u>, 732 F.Supp.2d at 964 (same); <u>Rosal v. First Fed. Bank of Cal.</u>, 671 F.Supp.2d 1111, 1122-24 (N.D. Cal. 2009) (same).

As for the Menjivars' FHA and ECOA claims, once again, the Menjivars did not timely offer any argument countering WFB's contention that these claims were time-barred, and thus they have forfeited any such argument. Moreover, the discovery rule simply does not apply to these claims. <u>See</u> <u>Garcia v. Brockway</u>, 526 F.3d 456, 465 (9th Cir. 2008) (en banc); <u>Thiel v. Veneman</u>, 859 F.Supp.2d 1182, 1199 (D. Mont. 2012); <u>see also</u> <u>Grimes v. Fremont Gen. Corp.</u>, 785 F.Supp.2d 269, 291-94 (S.D.N.Y. 2011).

Because no amendments consistent with the Menjivars' existing allegations would have cured the limitations defects in their TILA, FHA and ECOA claims, the bankruptcy court properly dismissed these claims without leave to amend.

**E.   Other Claims**

The FAC sets forth several so-called claims for relief that in reality are remedies or are entirely derivative of their other, substantive claims. Because we have determined that none of their substantive claims are viable, none of their derivative claims or remedies-based claims are viable either.[14]

---

[14]The Menjivars' fourteenth claim for relief, seeking to disallow as untimely WFB's proof of claim filed in Mr. Menjivar's latest chapter 13 bankruptcy case is derivative because it assumes that WFB's claim is unsecured based on the allegations contained in the Menjivars' other claims for relief. In any event, Rule 3002(c)(3) gives a secured creditor whose security interest is avoided by a judgment of the bankruptcy court an

(continued...)

22

**CONCLUSION**

For the reasons set forth above, we AFFIRM the bankruptcy court's order dismissing the FAC without leave to amend.

---

[14](...continued) extended deadline to file a proof of claim, until thirty days after all appeals from the subject judgment have been exhausted. Since no judgment has been entered against WFB avoiding its July 2007 trust deed, the deadline for WFB to file a proof of claim has not run.